IMMEGA, Plaintiff and Appellant, vs. CITY OF ELKHORN, Defendant: WALWORTH COUNTY, Defendant and Respondent.

*September 14—October 12, 1948.*

For the appellant there were briefs by *Cavanagh, Stephenson, Mittelstaed & Sheldon* of Kenosha, and oral argument by William A. Sheldon.

For the respondent there was a brief by *Maloney & Wheeler* of Madison, and oral argument by *Norris E. Maloney*.

FRITZ, J. The alleged invalidity of the tax, because of which plaintiff seeks to recover herein $66.61, which he paid under protest, represents taxes which he claims were unlawfully levied in 1945 by the county of Walworth (hereinafter referred to as "county") and city of Elkhorn against his property. The alleged invalidity is based upon plaintiff's claim that the Walworth county board was unauthorized to make a levy in the year 1945 until, upon first making up a budget of proposed revenues and expenditures in the ensuing year, it deducted from the amount to be raised by levying the tax all unexpended money and funds or balances thereof held by the county which were "funds on hand" within the meaning of that term in sec. 65.90 (1), Stats., the budget statute. At that time there were on hand, (a) a general fund balance, (b) unexpended funds raised for highway and bridge purposes, and (c) a fund for a contemplated new courthouse. Sec. 65.90, Stats., is applicable to Walworth county, and, so far as here material, provides in sub. (1) that the county having—

"  .  .  . the power to levy or certify a general property tax or budget shall annually, prior to the determination of the sum to be financed in whole or in part by a general property tax,

*funds on hand* or estimated revenues from any source, formulate a budget and hold public hearings thereon.

"(2) Such budget shall list all existing indebtedness and all anticipated revenue from all sources during the ensuing year and shall likewise list all proposed expenditures for each department or activity during the said ensuing year, and the county budget shall list proposed expenditures for postwar planning under section 59.08 (53), if any. . . ."

Under this statute, the Walworth county board, on November 16, 1945, adopted its budget of $436,471.06 for the tax for the ensuing year. On November 20, 1945, the board adopted a tax-levy resolution providing for the raising of that amount. At the end of the year 1945, *i.e.*, December 31, 1945, the county had on hand, according to its balance sheets, $831,548.75, consisting of:

| | | |
|---|---|---|
| Current assets | | $520,617.53 |
| Trust assets | | 51,274.98 |
| Sinking fund assets: | | |
| Highway bond redemption fund—cash | $ 5,037.00 | |
| Courthouse building fund—cash | 13,624.48 | |
| Courthouse building fund—U. S. certificates | 87,000.00 | |
| Total sinking fund assets | | 105,661.48 |
| Delinquent real estate taxes | | 153,994.76 |
| Total assets | | $831,548.75 |

On said balance sheet there is listed and stated as "surplus" the following:

| | | |
|---|---|---|
| County supt. of schools fund | $ 1,043.42 | |
| Highway department funds | 391,559.33 | |
| General fund | 280,076.64 | |
| Total highway funds due from county treasurer | | $362,683.27 |
| Courthouse building fund | | 100,624.48 |
| Agency funds | | 35,463.28 |
| Trust funds | | 2,432.75 |
| General fund | | 168,543.92 |
| Total of all funds | | $669,747.70 |

Plaintiff claims that of said total assets, amounting to $831,548.75, the county, on December 31, 1945, had on hand in cash or equivalent, an unexpended and unappropriated surplus of $548,897.65; and that this surplus was sufficient for the county to meet the entire tax levy in 1945 of $436,471.06 for the ensuing year, including state taxes, and have $112,426.59 left over.

Part of said surplus consisted of $96,140, which had been on the county's records as a so-called "special sinking fund." This fund was apparently created by the continuation of a sinking fund started in 1932 for the purpose of retiring a $250,000 issue of relief bonds. Twenty-five per cent of all redemptions of county-owned tax certificates or deeds was set aside in the sinking fund to retire said bonds. In 1941 provision was made that upon the retirement in full of those bonds in January, 1942, the sinking fund would be continued by placing twenty-five per cent of tax redemptions in what was called a "special sinking fund," without any designation as to the purpose thereof. A resolution to engage certain architects to prepare preliminary plans for a courthouse was defeated on September 12, 1945. But at that meeting a resolution was unanimously adopted to build a new courthouse without any designation of the architect; and a motion was carried that the chairman appoint a committee of board members to secure an architect to submit plans for the courthouse. On November 14, 1945, a resolution was introduced to create by taxation a fund of $100,000 for the purpose of building a courthouse, and on November 19, 1945, a substitute amendment to this resolution was adopted which reads:

"Whereas, this fund is not earmarked for any specific purpose, and whereas, it is deemed inadvisable to increase the present budget, and whereas, it is the *desire* of the board to set aside funds for *future use* in building a new courthouse;

"Now, therefore be it resolved, that the present fund known as 'special sinking fund' be changed on the county records to 'new courthouse fund.'"

Plaintiff contends the sum in that fund constituted "funds on hand" within the meaning of that term as used in the above-quoted portion of sec. 65.90 (1), Stats., which requires that the county,—

". . . shall annually, prior to the determination of the sum to be financed in whole or in part by a general property tax, *funds on hand* or estimated revenues from any source, formulate a budget and hold public hearings thereon."

And therefore plaintiff contends that the county, before levying a tax in 1945 for the ensuing year, should have deducted as unexpended money on hand, the amount of said special sinking fund from the amount of the proposed expenditures during the ensuing year.

As up to that time no authority had been granted nor appropriation made by the board for the building of a new courthouse, and no plans therefor had been approved or obligation whatever incurred in respect thereto, it is evident from and under the terms used in said resolution that its purpose and effect was that the board thereby sought to set aside unappropriated money, which had become accumulated, into a reserve for future use at some time which was not then duly specified, nor the amount to be used then determined.

Plaintiff contends the money in that fund was surplus unappropriated, unexpended cash, and so recognized by the resolution itself; that the resolution adopted on November 19, 1945, did nothing more than change the name of the unexpended, unappropriated cash from "special sinking fund" to "new courthouse fund;" that it was the stated purpose of the county board by its resolution to create a surplus for future use and refused to apply the unexpended and unappropriated balance toward a reduction of the tax levy of 1945 for the ensuing year; and that the board's acts in those respects are unlawful and ineffective. The county board's adoption, on September 12, 1945, of the motions to build a new courthouse and to authorize the board's chairman to appoint a committee of board

members to secure an architect to submit plans therefor, and the board's resolution of November 19, 1945, reciting that it is the desire of the board to set aside funds for future use in building a new courthouse, and therefore resolving that the present fund known as "special sinking fund" be changed on the county records to "new courthouse fund," merely changed the name of the sinking fund without then making any binding appropriation thereof. And the recital in the resolution is only a statement of "the desire of the board to set funds aside for future use in building a new courthouse," but there was in fact then no binding appropriation made or other official action to effectuate the desire. As there was in fact no effective determination, undertaking, or commitment to then incur any binding obligation for the building of a new courthouse, or the actual appropriation of said sinking fund for that purpose, the county still held and had on hand at the end of the year 1945 the unappropriated and unexpended amount of the fund in question, whatever it was called on its records. There apparently is no statute authorizing the creation of such a sinking or unappropriated fund under such circumstances as in the case at bar. The only authorized sinking fund is that which is required by sec. 67.11, Stats., for solely the specific purpose of providing for the payment of a particular bond issue. Likewise there is no statute empowering the county to levy a tax to create a surplus for any purpose excepting for postwar planning, pursuant to sec. 59.08 (53), Stats.; nor is there any statute authorizing a county to levy taxes for the purpose of accumulating funds in substantial amounts of money for the future or contingencies which may never occur, or for the purpose of enriching the public treasury. The weight of authority is to the contrary. As stated in *People v. Roth*, 389 Ill. 287, 291, 59 N. E. (2d) 643,—

"The law is well settled that questions as to what projects may be erected and the amount to be raised for such purposes

are committed to the discretion of the governing body of the municipality but it is not authorized to make levies to accumulate a fund for some project to be developed at some indefinite future time. . . . Levies for such indefinite purposes are condemned for the reason that the unnecessary accumulation of money in the public treasury is unjust to the people, in that it deprives them of the use of their money for a period of time, and, in that the accumulation of money in excess of needs furnishes a temptation to those in charge to expend public funds recklessly and more than is needed." See also *People v. Dearborn St. Bldg. Corp.* 372 Ill. 459, 24 N. E. (2d) 373, 375; *State v. Peal,* 136 Kan. 136, 13 Pac. (2d) 302, 305; *Grubb v. Smiley,* 142 Okla. 19, 285 Pac. 38, 43; *El Reno Wholesale Groc. Co. v. Taylor,* 87 Okla. 140, 209 Pac. 749, 759; 61 C. J., Taxation, p. 557, sec. 681.

Likewise, in the absence of a statute to the contrary, there is the rule that,—

"In levying taxes to meet the requirements of expenditures the amount of money on hand and in the process of collection should be considered. The unnecessary accumulation of money in the public treasury is unjust to the people, and it is against the policy of the law to raise taxes faster than they are likely to be needed. . . ." *People v. Westminister Build. Corp.* 361 Ill. 153, 160, 197 N. E. 573; *In re Bliss,* 142 Okla. 1, 285 Pac. 73, 78; *Stuart Arms Co. v. San Francisco,* 203 Cal. 150, 263 Pac. 218, 219.

In *Bingham v. Board of Supervisors,* 127 Wis. 344, 351, 106 N. W. 1071, this court recognized the rule that,—

"So far as ordinary tax levies are concerned, the county board cannot make tax levies for future years. . . ."

Consequently the amount in said sinking fund was available as "funds on hand," and therefore the county board should have deducted the amount thereof from the proposed levy of the tax in 1945; and the trial court's conclusion that said amount need not be so deducted cannot be sustained.

Plaintiff further contends that on December 31, 1945, there was unappropriated and unexpended the accumulated amount of $391,559.33 in the county road and bridge fund, and that

this amount was surplus which was likewise available for application to the reduction of said tax levy. In relation to that fund the court stated in its findings of fact the following:

All of said sum of $391,559.33 "had been raised within the two-mill limitation of section 83.065, Wis. Stats. Due to the unavailability of materials, labor and equipment during the period of the war it was impossible for Walworth county to carry on its normal program in regard to the maintenance and new construction of certain specified projects; that in view of such circumstances it was necessary to forego maintenance and repair of the highways as well as certain types of 'gang maintenance' and new construction which was planned and appropriations made therefor. Appropriations had been made from year to year for new construction of particularly designated highway projects, but the money not expended due to shortage of materials, labor and equipment which such projects yet remaining to be completed as of December 31, 1945, were in the total amount $147,757.61. Road-building equipment and machinery is purchased from time to time by the highway department of Walworth county from appropriations made under the county road and bridge fund; the county road and bridge fund is used as a revolving fund into which are placed earnings by way of machinery rental on a cost-accounting basis whenever such machinery and equipment is used in the construction or repair of either county roads or state roads under contractual arrangement with the state highway department. The book cost of all the machinery, equipment, and tools owned by the highway department as of December 31st, 1945, was in the total amount of $184,608.47; the depreciated value of such machinery, equipment, and tools as of said date was in the amount of $62,283.93; and the depreciation reserve within the county road and bridge fund was in the amount of $122,324.54. There were reasonable grounds at the end of 1945 for the county officials to believe that materials, labor, and equipment would become available at the conclusion of the war in sufficient quantities, quality, and price as to permit the normal maintenance and repair of the highways, at an increased cost averaging twenty-eight per cent above the five-year preceding period; that the total amount of money reasonably to be required for maintenance, snow removal, and

reserves for emergency repair in the event of a catastrophe would have been had materials been plentifully available in the amount of $166,600. On November 20, 1945, . . . the Walworth county board passed by a vote of 32 to 0 a resolution appropriating all unexpended highway balances to the highway committee with broad authority vested in the highway committee to use such funds for the purchase of machinery, the completion of undertaken projects and the repair and general maintenance of the highways with authority vested in the committee further to transfer said funds from one project to another as the facts might require; and said resolution specifically provided that in view of the continuous requirements for the maintenance and construction of highways from year to year that any unexpended balance should remain for the same purpose in the ensuing year."

Upon those facts the court concluded:

"The county road and bridge fund having been raised within the two-mill limitation specified in section 83.065, Wis. Stats., in the amount of $391,559.33 as of December 31, 1945, was dedicated to and properly appropriated for highway purposes and as such must be kept inviolate for such purposes and cannot be diverted for other general purposes of the county, at least until such time as it can be shown by credible evidence that the need for such funds no longer exists, and in this case there is no evidence whatsoever that the need for said funds has expired. The Walworth county board acted within its lawful authority in adopting the 1946 budget and the further resolution appropriating all unexpended balances in the county road and bridge fund to the highway department for future maintenance and construction of highways within said county. Said funds in the county road and bridge fund shall be treated as trust funds dedicated to the purpose for which they were appropriated."

There was ample credible evidence to warrant those findings of fact and conclusions of law (excepting that the conclusion that the board "acted within its lawful authority in adopting the 1946 budget" would be erroneous, if this statement was intended or deemed to be also applicable to the aforesaid sink-

ing fund). In relation to a county road and bridge fund, sec. 83.065, Stats., provides:

"The county board shall annually levy a tax of not more than two mills on the dollar, in addition to all other taxes, and the proceeds shall be known as the 'County Road and Bridge Fund.' Expenditures from said fund shall be made only for the purposes of constructing and maintaining highways and bridges under this chapter and for purchasing, operating, renting and repairing machinery, quarries and gravel pits used in such construction and maintenance."

And sec. 83.04 (5), Stats., provides:

"When final payment has been made upon any highway improvement, any funds remaining in the county treasurer's hands which were provided by any subdivision of the county for that particular improvement, shall be placed together with the county's balance available for that job to the credit of such subdivision of the county, and shall be used to increase the funds available for the next construction job in said subdivision, and any such balance in the bridge fund may be transferred to the road fund or vice versa by the town or village board with the approval of the county highway committee."

Under these statutes the county board was authorized to provide, as it did by resolutions adopted year by year, that all highway projects are continuous and that any funds remaining after a project is completed might be used to make up any deficit that might occur in any other improvement of the same class, and that "any balances remaining at the end of the year in any highway fund shall remain and be available for the same purpose in the ensuing year, and any deficit in any highway fund at the end of the year . . . shall be paid from the next appropriation made for the same purpose."

As stated in the trial court's decision,—

"Before any particular balances are considered 'funds on hand' it must appear that the funds are not earmarked for some other project and that they are available as surplus. No evi-

292

dence was offered on this point, the plaintiff claiming that all balances on hand (except certain trust funds) must be considered 'funds on hand' and thus surplus under the budget law. The county board had also passed, year by year, a resolution similar to the following: 'The exact amount of the funds that will become available for highway purposes in the county under section 20.49 of the statutes will not be known until June 20, 1946. . . . Be it resolved that the county treasurer is hereby authorized and directed to make payments for the purpose for which such funds are to be used as hereinbefore authorized from any funds in the county treasury that are not required for the purpose for which appropriated prior to August 1st, 1946; and to reimburse such funds in the county treasury from the sums received 'under section 20.49 of the statutes.' Likewise, the board further provided: 'That the county highway committee is hereby authorized pursuant to section 83.015 (2) of the statutes to purchase without further authority, and to the extent that revolving funds accumulated for such purpose or appropriations made for such purpose are available, such highway equipment and supplies as they may deem necessary to properly carry on the work. . . .' It seems clear, therefore, that highway construction is continuous and that it is within the power of the county board to accumulate funds for the highway and bridge fund as has been done in this case. It would be impossible for the board to use any money left from a finished or unfinished project under the provisions of above statute and the resolution of said board if all had to be used as 'other funds' when making up the annual budget. These funds, in the court's opinion, are not 'available funds' to be used as a deduction in amount to be raised for the ensuing year. They were raised for a particular purpose and until that purpose has been fulfilled, they are in fact trust funds. *Weik v. Wausau,* 143 Wis. 645. The county board has also, year by year, been depreciating its machinery, equipment and tools at varying rates, depending on the nature of the equipment, from eight and one-half per cent to twelve and one-half per cent annually, until there is now in this depreciation fund over $100,000. The purpose of this, of course, is to have on hand sufficient funds to purchase new equipment as the old becomes worthless or outmoded. This is no more than common sense and good business. It is simply applying to the county's

business one of the basic business practices of all business concerns. It would seem ridiculous to the court to hold that all of this depreciation fund must be thrown in the pot and paid out in every year so as to leave the county without any cash reserve in making up the annual budget, . . . or that the county's business should be handled any different than that of any first-class business concern. There is no law requiring a given road contract or project to be completed within a given year, whether by contract or otherwise. If the plaintiff is correct in his contention, then all funds on hand when budget hearing is held must be deducted from amount to be raised by taxation and no attention paid to the balance to become due on given contracts or projects or for purchase of new equipment should the old become unfit for use. There was no evidence as to what part of the highway and bridge fund was so needed, but it clearly appears that several projects are not completed and some contracts not let because of inability to secure materials and manpower."

In view of the matters thus stated by the court, there were fully warranted and must be sustained its conclusions that said funds in the county road and bridge fund shall be treated as trust funds dedicated to the purpose for which they were appropriated, and that they are not to be considered "funds on hand" (within the meaning of that term as used in sec. 65.90 (1), Stats.), which are free and available for use for some other purpose. Consequently in this latter respect there was no error. But because of the above-stated error in relation to the county board's failure to make said deduction of the amount of the sinking fund, the judgment must be reversed and the cause remanded for further proceedings for the adjudication of such relief as plaintiff may be entitled to by reason of said failure on the part of the board.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings as directed in the opinion.

MARTIN, J. took no part.