FIORE, Appellant, vs. CITY OF MADISON, Respondent.
[Three cases.]

*June 4—July 3, 1953.*

For the appellants there was a brief by *Randolph R. Conners* and *Frederick F. Hillyer,* both of Madison, and oral argument by *Mr. Hillyer.*

For the respondent there was a brief and oral argument by *Harold E. Hanson,* city attorney.

A brief *amici curiae* was filed by *Robert D. Sundby* of Madison, counsel for the League of Wisconsin Municipalities, and by *Harry G. Slater,* first assistant city attorney, for the city of Milwaukee.

BROWN, J. The controversy centers around the city's segregation of $600,737.06 of its funds by appropriating them to a "city-county nonlapsing building-reserve fund"

instead of devoting them to the budget and plaintiff's effort to make such amount available to defray the 1952 budget *pro tanto*.

On December 27, 1951, the common council, which is the governing body of the city of Madison, a city of the second class, held a public hearing on a previously formulated budget designed to plan and control the revenues, expenses, and general property taxation for the year 1952, as directed by sec. 65.90, Stats. At the conclusion of the public hearing the common council adopted the budget and thereafter, at the same meeting by resolution appropriated $600,737.06 to the city-county nonlapsing building-reserve fund, taking such appropriation from the general fund, $500,000, and the municipal reserve fund, $100,737.06. Plaintiff contends that at the time of the adoption of the budget these amounts were unallocated surplus funds required by law to be applied to budgeted expenses and to reduce the amount to be raised by taxation.

In a matter such as this the sequence of resolutions is not material. Until the budget is adopted the various items of projected collections and disbursements are not fixed; consequently, amounts available for other lawful purposes not to be carried out within the one-year program of the budget are unknown and appropriations of funds for such purposes may not safely be made. Since the resolution concerning the budget and the one making such appropriations cannot be adopted simultaneously, the requirements of the law are satisfied if the allocation of funds to a specific lawful project is made with reasonable promptness after the adoption of the budget and relates back to prevent such funds from having the character of an unallocated surplus at the moment the budget was adopted.

Sec. 67.04 (2) (w), Stats., authorizes cities to borrow money for the construction of a joint city and county building, and sec. 65.07 (1) (c) authorizes taxation to create and

maintain a permanent improvement fund for the same purpose and, further, permits the council to allow such a fund to accumulate from year to year. The legislature, having given its blessing to long-range city-county building projects and authorized their financing by taxation or by loans, certainly did not imply that cities could not prepare for the same purpose by less radical exercise of their powers, as by appropriating money already on hand. Furthermore, implication alone would not be sufficient. The city of Madison operates under the general charter law, ch. 62, Stats., and sec. 62.11 (5) thereof puts in the hands of common councils powers so extensive that we have said, in *Hack v. Mineral Point* (1931), 203 Wis. 215, 219, 233 N. W. 82:

". . . a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it."

No express limitation on the subject at hand has been called to our attention.

The plaintiff relies strongly on *Immega v. Elkhorn* (1948), 253 Wis. 282, 34 N. W. (2d) 101, in which this court held an action of the county board was ineffective to divert funds from budget purposes to a county courthouse project. There are many distinctions between the cases on their facts but in this particular respect the controlling one is that in the *Immega Case, supra,* there was no appropriation of money by the county board to the building fund and we said, on page 287 of that case:

"As there was in fact no effective determination, undertaking, or commitment to then incur any binding obligation for the building of a new courthouse, or the actual appropriation of said sinking fund for that purpose, the county still held and had on hand at the end of the year 1945 the unappropriated and unexpended amount of the fund in question, whatever it was called on its records."

In so far as we are concerned with the sum of $600,737.06, appropriated to the city-county nonlapsing building-reserve fund and charged partially against the general fund and the rest against the municipal reserve fund, thereby exhausting the latter, we conclude that by the appropriation such amount ceased to be an unallocated surplus available to defray budget costs in relief of taxes.

Plaintiff submits that the city audit as of December 31, 1951, shows other surplus unallocated funds in large amounts which were not taken into consideration, but should have been, when the tax rate was fixed. We agree that if there are such funds they must be applied as far as they will go to finance the budget, but there are certain reservations. One is that the funds must be in cash or in so liquid a form as to be the equivalent of cash, if reliance to pay budgeted expenses is to be placed on them. Another is that, even of such cash, the last cent need not be devoted to reduction of taxes in aid of the budget. Ordinary business principles, which city government is neither required by law nor expected to disregard, permit the retention of reasonable working cash balances in the city treasury. Plaintiff's appraisal of what he calls an unallocated surplus is based principally on the city's balance sheet showing assets and liabilities. Inspection shows that some of the assets are obviously frozen. Plaintiff does not show to the trial court's satisfaction, nor ours, that the amount he considers surplus is sufficiently liquid to be classed as funds, as that term is used in the *Immega Case, supra,* the equivalent of cash, and hence vulnerable to the demands of the budget. Neither do we have proof of the amount reasonably required for a working cash balance of the city. The amount of liquid assets being unknown and likewise unknown the amount thereof which ought to be retained in the treasury for a working balance, the court could not determine whether there was any remaining sum which could properly be called on to defray the budget in aid of taxation, nor could it ascer-

tain whether plaintiff's taxes were higher than they should have been nor in what amount. We conclude that the learned trial court correctly dismissed the complaints in the three actions.

*By the Court.*—Judgments affirmed. The brief of respondent exceeds 50 pages and it has applied for an allowance of its entire cost of printing, as permitted by Rule 10. Such cost is hereby allowed.

MARTIN, J., took no part.