BLUE TOP MOTEL, INC., Ronald McCord and James McCord, d/b/a Traveller Motel; Point Motel, Inc., Roadstar Inn Motel of Stevens Point, Inc., and Zenoff Inns, Inc., Plaintiffs-Appellants,

v.

CITY OF STEVENS POINT, Defendant-Respondent.

Supreme Court

*No. 81–1096. Argued April 27, 1982.—Decided June 2, 1982.*

(Also reported in 320 N.W.2d 172.)

For the plaintiffs-appellants there were briefs by *Tink-ham, Smith, Bliss, Patterson, Richards & Hessert* and oral argument by *George A. Richards,* all of Wausau.

For the defendant-respondent there was a brief and oral argument by *Louis J. Molepske,* city attorney.

For the attorney general the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J. This is an appeal from an order of the circuit court for Portage county, ROBERT C. JENKINS, Circuit Judge, which dismissed the plaintiffs' declaratory judgment action. The plaintiffs are hotel and motel owners in Stevens Point, Wisconsin, who sought a declaration that a city ordinance, which imposed a tax on the privilege of furnishing rooms and lodging, was invalid. The court of appeals certified the plaintiffs' appeal to this court, pursuant to sec. 809.61, Stats. 1979–80, and we accepted the certification.

Sec. 66.75, Stats. 1979–80, authorizes a municipality to enact a "room tax." The statute provides:

"**66.75 Room tax.** The governing body of a town, village or city may enact an ordinance imposing a tax on the privilege of furnishing, at retail, rooms or lodging to transients by hotelkeepers, motel operators and other persons furnishing accommodations that are available to the public, irrespective of whether membership is required for use of the accommodations. In this section

'transient,' 'hotel' and 'motel' have the meaning set forth in s. 77.52(2)(a)1. Any tax so imposed shall not be subject to the selective tax imposed by s. 77.52(2)(a)1."

On May 19, 1980, the common council of Stevens Point passed sec. 4.12 of the Revised Municipal Code. This ordinance states in part:

"(2) Pursuant to Wisconsin Statutes, Section 66.75, a tax is hereby imposed on the privilege and service of furnishing, at retail, of rooms or lodging to transients by hotelkeepers, motel operators, and other persons furnishing accommodations that are available to the public, irrespective of whether membership is required for the use of the accommodations. Such tax shall be at the rate of four percent (4%) of the gross receipts from such retail furnishing of rooms or lodgings. Such tax shall not be subject to the selective sales tax imposed by Wisconsin Statutes, Section 77.52(2)(a)1."

The ordinance also provides that every person furnishing such rooms and lodging must apply for a permit and pay a $2 fee to obtain a permit. Failure to pay the tax and otherwise comply with the requirements of the ordinance can result in a revocation or suspension of the permit. Provisions are made in the ordinance for the city treasurer to administer the collection of the tax. The treasurer is authorized to conduct audits in order to verify a hotel or motel operator's liability for this "room tax." The proceeds from the tax are allocated by the ordinance to "the Special Parks and Recreation Sinking Fund of the City of Stevens Point." The ordinance does not state the purpose for which the funds will be used nor does it contain any limit on the amount that can be raised.

The plaintiffs raised several arguments in the circuit court in support of a declaration that the ordinance was invalid. Their principal contentions arose from the fact that the tax is measured according to the gross receipts

from the retail furnishing of rooms and lodging. The plaintiffs argued that the city lacked specific legislative authorization to use gross receipts as the basis of the tax. Further, they argued that a tax measured by gross receipts cannot be enacted by the city because such a tax is "measured by income" and is prohibited by sec. 66.70, Stats. 1979–80.[1] In addition, the plaintiffs argued that the ordinance is defective because it established a sinking fund without any definite purpose and without any limit on the amount of funds that can be accumulated.

The circuit court upheld the ordinance, ruling that sec. 66.75, Stats. 1979–80, does provide authority for a "room tax" measured by gross receipts. It also concluded that sec. 66.70 only prohibits cities from taxing net income and therefore does not apply to this case. Finally, the court held that because there was no evidence that excess amounts had accumulated in the sinking fund the ordinance was valid.

In order to clarify the relation between these statutes, this court accepted the case following certification by the court of appeals.

We hold that the city can use the gross receipts as the basis by which to determine the room tax. Sec. 66.75, Stats. 1979–80, does authorize cities to enact a room tax and the gross receipts method is a fair and reasonable way of calculating the tax. It is true, as the plaintiffs contend, that cities have no inherent power to tax. Cities may only enact the types of taxes authorized by the legislature. *Jordan v. Menomonee Falls*, 28 Wis. 2d 608, 621, 137 N.W.2d 442 (1965). However, sec. 66.75

---

[1] Sec. 66.70, Stats. 1979–80, provides:

"**Political subdivisions prohibited from levying tax on incomes.** No county, city, village, town, or other unit of government authorized to levy taxes shall assess, levy or collect any tax on income, or measured by income, and any such tax so assessed or levied is void.

is a specific legislative grant of authority for cities to enact such a tax. Although the statute does not specify that the tax shall be based on gross receipts, it does provide for a scheme of taxation similar to the state sales tax in sec. 77.52, which is based on gross receipts.[2] Sec.

[2] Sec. 77.52, Stats. 1979–80, states in part:

"77.52 **Imposition of retail sales tax.** (1) For the privilege of selling, leasing or renting tangible personal property, including accessories, components, attachments, parts, supplies and materials, at retail a tax is hereby imposed upon all retailers at the rate of 3% of the gross receipts from the sale, lease or rental of tangible personal property, including accessories, components, attachments, parts, supplies and materials, sold, leased or rented at retail in this state on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%.

"(2) For the privilege of selling, performing or furnishing the services herein described at retail in this state to consumers or users, a tax is hereby levied and imposed upon all persons selling, performing, or furnishing such services at the rate of 3% of the gross receipts from the sale, performance, or furnishing of such services on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%.

"(a) the tax imposed herein applies to the following types of services:

"1. The furnishing of rooms or lodging to transients by hotel-keepers, motel operators and other persons furnishing accommodations that are available to the public, irrespective of whether membership is required for use of the accommodations. As used in this paragraph, 'transient' means any person residing for a continuous period of less than one month in a hotel, motel or other furnished accommodations available to the public. As used in this paragraph, 'hotel' or 'motel' means a building or group of buildings in which the public may obtain accommodations for a consideration, including, without limitation, such establishments as inns, motels, tourist homes, tourist houses, summer camps, apartment hotels, resort lodges and cabins and any other building or group of buildings in which accommodations are available to the public, except accommodations rented for a continuous period of more than one month and accommodations furnished by any hospitals, sanatoriums, or nursing homes, or by corporations or associations organized and operated exclusively for religious,

66.75 makes two direct references to the sales tax statutes. Many of the administrative provisions in the ordinance are clearly patterned after the sales tax provisions in sec. 77.52. Secs. 66.75 and 77.52 are both taxes upon the privilege of furnishing at retail. Sec. 66.75 allows cities to impose what is essentially a type of sales tax on a limited group of transactions. Arguably, the most equitable, reasonable and convenient way to measure the room tax is by basing it on gross receipts, as is done with the sales tax.

We also conclude that sec. 66.70, Stats. 1979–80, does not prevent the city from basing the tax on gross receipts. Sec. 66.70 provides:

**"Political subdivisions prohibited from levying tax on incomes.** No county, city, village, town, or other unit of government authorized to levy taxes shall assess, levy or collect any tax on income, or measured by income, and any such tax so assessed or levied is void."

The plaintiffs do not claim that the room tax is an income tax, but rather that it is "measured by income" and therefore void under sec. 66.70, Stats. 1979–80. However, we hold that sec. 66.70 does not apply here because sec. 66.75 explicitly authorizes this room tax. The ordinance taxes gross receipts derived only from the furnishing of rooms and lodging. Other potential income to the plaintiffs from the sale of meals or other services is not covered. In all probability, the gross receipts from furnishing rooms and lodging will comprise a significant part of the plaintiffs' income. A tax measured by the gross receipts can thus, in a sense, be said to be a tax measured by income. However, we view sec. 66.75 as creating a specific exception to the prohibition on income taxes in sec. 66.70. The legislature enacted sec.

charitable or educational purposes provided that no part of the net earnings of such corporations and associations inures to the benefit of any private shareholder or individual."

66.70 in 1947 as a general prohibition against cities enacting taxes on or measured by income. In 1967, the legislature created sec. 66.75, which granted cities the power to enact such a room tax. To the extent that the ordinance in question can be said to be a tax "measured by income," we hold that it is permissible as an exception created by the later, more specific statute.

Although we hold that the ordinance is valid insofar as the tax is concerned, we remand to the circuit court for consideration of the plaintiffs' arguments relating to the sinking fund. The plaintiffs claim that because no limits are set on the use of the revenue from this tax or the amount that can be collected, the revenue will accumulate as a surplus. They contend that the case of *Immega v. Elkhorn*, 253 Wis. 282, 34 N.W.2d 101 (1948), established the rule that such a sinking fund is illegal. *Immega* involved a sinking fund, ostensibly to be used for a new courthouse. However, no binding obligation was made or other official action taken towards the construction of a courthouse. This court stated at 287:

"The only authorized sinking fund is that which is required by sec. 67.11, Stats., for solely the specific purpose of providing for the payment of a particular bond issue. Likewise there is no statute empowering the county to levy a tax to create a surplus for any purpose excepting for postwar planning, pursuant to sec. 59.08 (53), Stats.; nor is there any statute authorizing a county to levy taxes for the purpose of accumulating funds in substantial amounts of money for the future or contingencies which may never occur, or for the purpose of enriching the public treasury."

This rule from *Immega* was qualified in *Fiore v. Madison*, 264 Wis. 482, 59 N.W.2d 460 (1953). In *Fiore*, the court recognized the right of city governments to retain reasonable amounts on hand to meet the city's needs. As the court wrote in *Fiore* at 486:

"Plaintiff submits that the city audit as of December 31, 1951, shows other surplus unallocated funds in large amounts which were not taken into consideration, but should have been, when the tax rate was fixed. We agree that if there are such funds they must be applied as far as they will go to finance the budget, but there are certain reservations. One is that the funds must be in cash or in so liquid a form as to be the equivalent of cash, if reliance to pay budgeted expenses is to be placed on them. Another is that, even of such cash, the last cent need not be devoted to reduction of taxes in aid of the budget. Ordinary business principles, which city government is neither required by law nor expected to disregard, permit the retention of reasonable working cash balances in the city treasury."

Taken together, *Immega* and *Fiore* establish generally that a city may retain funds to meet its needs, but may not simply carry a large surplus which has not been designated for any particular use.

In the present case the circuit court did not allow an evidentiary hearing to explore what uses are to be made of the fund and how much money had accumulated in it. The court did state that there was no evidence as to the use of the fund. The plaintiffs should be given an opportunity to show whether the revenues from this tax were actually being applied for parks and recreation purposes or were merely being carried as a surplus on the city's records, as in *Immega*. Therefore we remand to the circuit court for a hearing on this issue.

*By the Court.*—Order affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.