Ray BARTH, Plaintiff-Appellant,

v.

BOARD OF EDUCATION, SCHOOL DISTRICT OF MONROE, Defendant-Respondent.†

Court of Appeals

*No. 81–1353. Submitted on briefs January 6, 1982.— Decided June 22, 1982.*
(Also reported in 322 N.W.2d 694.)

---

† Petition to review denied. HEFFERNAN and CECI, JJ., took no part.

For the appellant the cause was submitted on the briefs of *Ray Barth* of Monroe.

For the respondent the cause was submitted on the brief of *Rodney O. Kittelsen* and *Kittelsen, Barry and Ross* of Monroe.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J.   Ray Barth appeals from a judgment dismissing his complaint for an injunction and other relief concerning a sinking fund created by the School District of the Monroe Board of Education and dedicated to the construction of a swimming pool.  Barth seeks to have the monies declared "funds on hand" and applied to general expenses.  The Board seeks to use the funds for

present and future capital expenditures other than a swimming pool. We conclude that the Board obligated the sinking fund for the purpose of funding a swimming pool and, thus, the monies are neither funds on hand nor available for other purposes. We reverse the judgment and remand with directions to enjoin use of the funds for purposes other than a swimming pool until the electors approve transfer of the funds to other uses.

In the years 1966 to 1973, the annual meeting of the Monroe School District voted to levy a tax in the sum of $25,000 for the purpose of constructing a swimming pool.[1] In 1974, the meeting appropriated an accumulated $200,000 to a sinking fund dedicated to construction of a swimming pool, but the 1974 meeting did not decide to seek immediate referendum approval of debt financing for the additional monies needed to finance the project. In the years 1974 to 1979, the meetings continued to levy tax for additional annual $25,000 sums and appropriate it to the sinking fund. On September 25, 1979, and April 1, 1980, the question of issuing bonds to raise the additional monies was put to a vote, and the electors defeated the issue both times.[2]

On July 15, 1980, the Board presented to the electors a referendum question seeking approval to transfer the swimming pool sinking fund monies to the district general fund. The voters also defeated the transfer.[3] Since

---

[1] The annual meeting has appropriated the money to a fund variously described as "pool," "pool fund" or "swimming pool." We consider the difference in terms to be of no consequence.

[2] More than one question was placed on the referendum ballot. The difference in the questions is not relevant to this appeal.

[3] We note that § 120.10(10), Stats., requires approval by two-thirds of the total number of electors in the district. Section 115.01 (13), Stats., defines the total number of electors. Barth's brief notes that the referendum to transfer the fund to the general fund received 1,678 votes in favor and 634 votes against, or 72% yes votes. These numbers suggest that the electors approved transfer of the fund to the general fund. Despite Barth's suggestion, we

defeat of the referendums, the Board desires to use the funds for purposes of capital expenditures other than a swimming pool.

We view this appeal as presenting four issues:

1. Did the circuit court err when it held that sec. 120.10 (10), Stats., authorized the annual meeting to levy a tax to create a surplus? We conclude that the court erred.
2. Is sec. 120.10 (10) a delegation of authority to levy a tax for purposes of current and future capital expenditures other than for paying all current bonded indebtedness? We conclude that it is.
3. Were the monies in the swimming pool sinking fund "funds on hand" for purposes of school district budgeting? We conclude that the funds were obligated and, thus, not funds on hand.
4. Were the monies available for purposes other than a swimming pool? We conclude that they were not, absent elector approval as provided in sec. 120.10 (10).

## TAXATION TO CREATE A SURPLUS WITHOUT PUBLIC PURPOSE

In its decision, the circuit court held that sec. 120.10 (10) "manifested an intent by the legislature to authorize a sinking fund for future use with no definite appropriation or goal in the category of capital expenditures." Barth correctly contends that the annual meeting does not have power to levy a tax to create a surplus having no public purpose. Wisconsin Constitution art. VIII, § 5 restricts the state from levying taxes to create a surplus having no public purpose.[4] Although the constitutional provision does not apply directly to municipalities, the

---

assume that the referendum failed to obtain the statutorily required number of votes approving transfer.

[4] *State ex rel. Garrett v. Froehlich*, 118 Wis. 129, 141, 94 N.W. 50, 53 (1903). WIS. CONST. art. VIII, § 5 provides:

*Annual tax levy to equal expenses.* SECTION 5. The legislature shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year; and whenever the expenses of any year shall exceed the income, the legislature shall provide for levying a tax for the ensuing year, sufficient,

same limitation applies to school districts because the state cannot delegate more power than it has and because secs. 65.90 and 120.12(3)(c), Stats., restrict the school district in a manner like Wisconsin Constitution art. VIII, § 5 restricts the state.[5] We conclude that the sinking fund monies cannot be judicially approved as a tax levy to create a surplus having no public purpose.

## THE POWER TO TAX FOR CURRENT AND FUTURE CAPITAL EXPENDITURES

Section 120.10, Stats., provides in part:

The annual meeting of a common or union high school district may:

. . . .

with other sources of income, to pay the deficiency as well as the estimated expenses of such ensuing year.

[5] Section 65.90(1), Stats., provides in part:
[E]ach . . . school district . . . shall annually, prior to the determination of the sum to be financed . . . formulate a budget and hold public hearings thereon.

Section 120.12, Stats., provides in part:
The school board of a common or union high school district shall:
. . . .
(3) . . . (a) On or before the 3rd Monday in October, determine the amount necessary to be raised to operate and maintain the schools . . . the . . . amount so determined to each appropriate municipal clerk who shall assess the amount certified and enter it on the tax rolls as other school district taxes are assessed and entered.
. . . .
(c) If on or before the 3rd Monday in October the school board determines that the annual meeting has voted a tax greater than that needed to operate the schools . . . the school board may lower the tax voted by the annual meeting.

These statutes are comparable to WIS. CONST. art. VIII, § 5 in that they require school districts to levy a tax sufficient to defray expenses and to cover any deficiency existing from the prior year. They also permit reduction of a levy when a surplus is anticipated and require any surplus funds on hand be applied toward expenses in the subsequent year.

(10) SCHOOL SINKING FUND. Vote a tax to create a sinking fund under s. 67.11 for the purpose of financing all current and future capital expenditures and for paying all current bonded indebtedness for capital expenditures. All money raised through taxation or otherwise collected pursuant to this subsection shall be deposited by the school district treasurer in a separate sinking fund. Such money shall not be used for any other purpose, except as provided by s. 67.11(1), or be transferred to any other fund except by authorization by a two-thirds majority vote of the total number of electors of the school district.

The subject matter of ch. 67, Stats., is municipal borrowing, and sec. 67.11, Stats., requires municipalities to establish and maintain a sinking fund corresponding to any outstanding municipal bonds.

Barth reads sec. 120.10(10) strictly. He relies upon *Immega v. City of Elkhorn,* 253 Wis. 282, 34 N.W.2d 101 (1948), where the county board desired to set aside the funds for future use in building a new courthouse, but made no appropriation toward it. The court stated:

There apparently is no statute authorizing the creation of such a sinking or unappropriated fund under such circumstances as in the case at bar. The only authorized sinking fund is that which is required by sec. 67.11, Stats., for solely the specific purposes of providing for the payment of a particular bond issue.

*Immega,* 253 Wis. at 287, 34 N.W.2d at 103. He concludes that the annual meeting has no power to levy a tax and place the funds in a sinking fund unless the district has issued bonds under ch. 67 and is required to create a sinking fund under sec. 67.11.

The Board reads sec. 120.10 as empowering it to create a sinking fund either "for paying all current bonded indebtedness for capital expenditures" or "for the purpose of financing all current and future capital expenditures." The Board contends that when it dedicated monies to the sinking fund in 1974 and subsequent years,

it created a fund for current and future capital expenditures.

A statute is ambiguous if it is capable of being read by a reasonable person in either of two senses.[6] The competing readings of sec. 120.10(10) establish that the statute is ambiguous. The construction of an ambiguous statute is a question of law, and we review the question independently of the circuit court's decision.[7]

We conclude that sec. 120.10(10) authorizes an annual meeting to levy a tax for purposes of current or future capital expenditures even without corresponding, existing bonded indebtedness. Section 40.22(17), Stats. (1953), the predecessor to sec. 120.10(10), was enacted after *Immega*. In addition, *Immega* involved a question of county taxing power, not school district taxing power. *Immega*, then, does not control our interpretation of sec. 120.10(10).

The primary goal in statutory construction is to give effect to the legislative intent.[8] Rules of statutory construction disfavor constructions that cause some language to be surplusage.[9] Barth's reading reduces sec. 120.10(10) to "the annual meeting . . . may: vote a tax to create a sinking fund under sec. 67.11 for . . . paying all current bonded indebtedness for capital expenditures." This reading causes "for the purpose of financing all current and future capital expenditures" to become sur-

[6] *Wirth v. Ehly*, 93 Wis. 2d 433, 441, 287 N.W.2d 140, 144 (1980).

[7] *Roe v. Larson*, 94 Wis. 2d 204, 206, 287 N.W.2d 824, 825 (Ct. App. 1979), *revd on other grounds*, 99 Wis. 2d 332, 298 N.W.2d 580 (1980).

[8] *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 164, 288 N.W.2d 129, 135 (1980).

[9] *Donaldson v. State*, 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980).

plusage. We conclude that sec. 120.10 (10) authorizes annual meetings to vote to levy a tax "for the purpose of financing current and future capital expenditures" in addition to a levy for paying bonded indebtedness.

This construction is consistent with sound public policy. In this era of tight tax dollars, the risk that school districts will overuse a power to tax to accumulate funds for future capital expenditures is small. The legislature has endeavored to give municipalities the power to run local affairs in the manner sound businesses are run. In those situations where sound business judgment would accumulate capital to finance a capital expenditure rather than financing the expenditure by incurring debt, our construction permits the school district to follow sound business practice. Barth's construction would unjustifiably restrict the school district from engaging in a sound practice.

This construction of sec. 120.10 (10) does not give school districts any more power to tax than is enjoyed by other municipalities. In *Fiore v. City of Madison*, 264 Wis. 482, 59 N.W.2d 460 (1953), city taxpayers attacked an appropriation to a fund dedicated to pay for an anticipated city-county building. Citing *Immega*, the taxpayers argued that the monies were funds on hand available for general use. The court approved the appropriation even though the city had no bonded indebtedness corresponding to the city-county building project. *Fiore*, 264 Wis. at 485, 59 N.W.2d at 462. Since other municipalities have such power, it is reasonable to determine that school districts have like power.

Barth's reading of sec. 120.10 (10) would also lead to an absurd result in the workings of ch. 67. Section 67.05 (10), Stats., authorizes:

the municipality issuing . . . bonds . . . [to] make an appropriation in advance of the authorization of such bonds . . . .

Barth's construction of sec. 120.10(10) would prohibit school districts from levying a tax for purposes of such an appropriation. Since the provisions of ch. 67 control borrowing by school districts, the result that school districts cannot make an appropriation that other municipalities are authorized to make under ch. 67 is absurd. Because Barth's construction produces an absurd result, it is disfavored.[10]

We do not, however, reach our conclusion from evidence of the Department of Public Instruction's (DPI's) interpretation of sec. 120.10(10). The construction of a statute by an agency charged with responsibility to administer it is generally entitled to great weight.[11] The circuit court relied upon a reporting form prepared by DPI for use by school districts as evidence of DPI's interpretation of sec. 120.10(10). In this case, we cannot recognize the reporting form as a statutory interpretation by an administrative agency.[12] Thus, although DPI's interpretation might be entitled to great weight, the record is devoid of any evidence that DPI has interpreted this statute.

THE SWIMMING POOL SINKING FUND MONIES ARE NOT FUNDS ON HAND

We also conclude that the swimming pool sinking fund monies were not funds on hand. In *Fiore*, 264 Wis. at 485, 59 N.W.2d at 462, the court distinguished its holding

[10] *Wisconsin Veterans Home v. Division of Nursing Home Forfeiture Appeals*, 104 Wis. 2d 106, 113, 310 N.W.2d 646, 648 (Ct. App. 1981), *petition for review granted*.

[11] *City of Milwaukee v. Lindner*, 98 Wis. 2d 624, 633–34, 297 N.W.2d 828, 833 (1980).

[12] *Cf. Hall Chevrolet Co. v. Department of Revenue*, 81 Wis. 2d 477, 483, 260 N.W.2d 706, 709 (1978) (an interpretation must be a reasoned justification).

in *Immega* because the City of Madison had appropriated its monies to a fund for the city-county building. The court noted that in *Immega,* the Walworth County Board had not made an appropriation. We do not decide whether the monies would have been funds on hand if Barth had brought an action prior to 1974. In 1974 and years since, the annual meeting has appropriated its funds to the swimming pool fund. Because the monies appropriated to the fund were dedicated to the construction of a swimming pool, the monies were obligated and were not funds on hand.[13]

## AVAILABILITY OF THE FUNDS FOR PURPOSES OTHER THAN A SWIMMING POOL

The Board contends that the funds are available for all current and future capital expenditures, not just for a swimming pool. It is possible that a sinking fund dedicated to all current and future capital expenditures without relation to specific projects has so little public purpose that it violates the prohibition against taxing for purposes other than a public purpose. We need not decide this question. The funds in question were dedicated to construction of a swimming pool. This purpose is clearly an adequate public purpose. *See* sec. 67.03 (6), Stats. Section 120.10 (10) restricts the unauthorized transfer of funds dedicated to a specific purpose and provides a means to authorize such transfers. The swimming pool funds are restricted to use toward a swimming pool until the Board obtains two-thirds elector approval

[13] *Accord Blue Top Motel, Inc. v. City of Stevens Point,* No. 81–1096 slip op. (Wis. June 2, 1982). The court remanded the case for an evidentiary hearing on whether revenues raised by a room tax "were actually being applied for parks and recreation purposes or were merely being carried as a surplus on the city's records . . . ." *Id.,* at 7.

for other uses. Consequently, we reverse the order of the circuit court denying injunctive relief to Barth. We remand the cause with the instruction to grant the injunction restricting the Board from using the fund for any purpose other than a swimming pool until electors approve any transfer.

*By the Court.*—Judgment reversed and cause remanded with directions. No costs to either party.