FRED A. RISSER, Chairperson Senate Organization Committee
The Senate Committee on Organization has requested an opinion on whether a county board may appropriate county funds for capital improvements, maintenance and operation of a county farm when "the county farm does not house county charges or is not used to house persons in need of public aid or support and is not being used for development, park or recreational purposes." It is assumed for the purpose of this opinion that such county farm was initially acquired for an authorized public purpose, a county poor farm, and that the county board has not declared that the farm is surplus property. I also assume that the county is continuing to operate the property in a manner which is similar to that in which it was operated prior to the discontinuation of its use as a county poor farm.
In Buell v. Arnold, 124 Wis. 65, 70, 102 N.W. 338 (1905), the court advised that "[c]ounties are parts of the state government, exercising delegated political powers for public purposes, and can take and hold lands for public use only. They cannot hold property for profit, or take title to it for the purpose of revenue, the same as an individual or private corporation." It was also pointed out in 41 Op. Att'y Gen. 162 (1952) that while a county may maintain and operate a farm in connection with, and as an incident to, certain institutions of a charitable, penal or civic nature, it may not maintain and operate such a farm as a separate enterprise. However, neither of these opinions indicate that the county may not continue to provide for such maintenance, operation and improvements of its public property as may be reasonably necessary, simply because the county has determined that certain of its property is no longer required or useful for the public purposes for which it was originally acquired or because the county may have no immediate specific *Page 170 
public use to which the property may be put. Moreover, counties are not required by law nor expected to disregard ordinary sound business principles and practices which may reasonably dictate the retention of assets in reasonable amounts to meet the needs of an on-going operation. See Fiore v. Madison, 264 Wis. 482,486, 59 N.W.2d 460 (1953).; Blue Top Motel, Inc. v. City ofStevens Pt., 107 Wis.2d 392, 398-99, 320 N.W.2d 172 (1982); 73 Op. Att'y Gen. 125, 127 (1984); 76 Op. Att'y Gen. 77 (1987).
It is my opinion that once a county acquires property for a valid public purpose, it is not suddenly ultra vires for a county to continue to own, manage and maintain such property when that specific purpose for which such property was originally acquired ceases. The ownership of real property by a public body, such as a county, should be viewed from the perspective that such body is essentially perpetual. In the overall continuum, it may reasonably be expected that there will be periods where a public property may no longer be required or useful for the specific public purpose which justified its original acquisition, yet also not be considered as surplus by the governmental body involved, even though there may be no immediate public use to which the property may be put. In fact, under appropriate circumstances, the retention of property originally acquired by the county for a now terminated public use, in order to insure its continued availability, may itself be legitimately viewed as serving a valid continuing public purpose.
For instance, it has long been generally recognized that a municipal corporation may lease its property which is not required for a municipal or other public purpose. Annot., 47 A.L.R. 3d 19, 67 (1973), "Power of Municipal Corporation to Lease or Sublet Property Owned or Leased by It"; 10 McQuillin MunicipalCorporations § 28.42 (1981); S.D. Realty Co. v. SewerageComm., 15 Wis.2d 15, 112 N.W.2d 177 (1961); Smith v. WisconsinRapids, 273 Wis. 58, 76 N.W.2d 595 (1956); Bell and another v.The City of Platteville, 71 Wis. 139, 36 N.W. 831 (1888); 58 Op. Att'y Gen. 179, 180-82 (1969). This rule undoubtedly extends to quasi-municipal corporations, such as counties. See S.D. RealtyCo., 15 Wis.2d at 27-28; Madison v. Hyland, Hall Co.,73 Wis.2d 364, 370, 243 N.W.2d 422 (1976); sec. 59.07(1), Stats. It has also been recognized that although a municipal corporation lacks authority to purchase a farm in the first instance for other than a public purpose, it may nevertheless lawfully own, manage and maintain such a farm for its *Page 171 
own pecuniary advantage and profit pending determination as to its ultimate disposition. Libby v. City of Portland, 105 Me. 370,74 A. 805, 806 (1909).
The manner in which such property is operated during the interim period between one specific public use and another is largely within the discretion of the governing body involved. Determinations as to whether a particular utilization of public property legitimately satisfies the immediate or prospective wants or needs of a municipality are said to be "largely within the discretion of municipal authorities, and that courts should not interfere with such discretion except in a plain case of its abuse." Bell, 71 Wis. at 145; Stone v. Oconomowoc, 71 Wis. 155,36 N.W. 829 (1888). Where the issue involves a legislative determination of public need and public purpose, the courts will only find an absence of such need or purpose if it is "clear and palpable" that there can be no public benefit. See State ex rel.Hammermill Paper Co. v. La Plante, 58 Wis.2d 32, 56,205 N.W.2d 784 (1973).
The public purpose doctrine, which dictates that there can be no expenditure of public funds to satisfy a private rather than a public purpose, is a limitation of constitutional origin which applies to entities operating under delegated power, such as counties, because the state cannot delegate more power than it has. Barth v. Monroe Board of Education, 108 Wis.2d 511, 514-15,322 N.W.2d 694 (Ct.App. 1982); Hammermill, 58 Wis.2d at 47-48. The authority of such entities to expend public funds must tend to the preservation of the general public welfare, and "[i]n order for a municipality to employ taxes to carry on a competitive business, such business must involve a public function or be concerned with some element of public utility."Heimerl v. Ozaukee County, 256 Wis. 151, 160, 40 N.W.2d 564
(1949).
Therefore, the county must take care to insure that there not be so little public purpose in maintaining the operation of such property that specific expenditures in reference to the same would be deemed to violate the prohibition against taxing for purposes other than a public purpose. See Barth, 108 Wis.2d at 520. An analysis might well consider such things as the type of activity carried on, the duration of such use, the amount of funds necessarily expended and control and accountability, since a reviewing court would evaluate both "the public purpose and the means of attaining it." State ex rel. Warren v. Reuter,44 Wis.2d 201, 213, 170 N.W.2d 790 *Page 172 
(1969). However, what constitutes a public purpose is a continually evolving concept, and "[t]he trend of both legislative enactments and judicial decisions is to extend the concept of public purposes in considering the demands upon municipal governments to provide for the needs of the citizens."Hammermill, 58 Wis.2d at 55-56.
DJH:JCM *Page 173