STEPHEN LEPLEY, Corporation Counsel Waukesha County
You ask whether there are circumstances in which county-owned land may be leased to a private entity that would construct, own and operate a racetrack licensed under section 562.05(1)(a), Stats.
In my opinion, land may not be acquired specifically for such a purpose, but land previously acquired for a valid public purpose may be leased to a private entity unless the circumstances of the lease demonstrate that the land has become surplus land.
Under section 59.01(1), counties may "acquire . . . real and personal estate for public uses or purposes . . . [and] sell, lease and convey the same." Although you suggest that a racetrack is open to all members of the public, the public purpose doctrine prohibits municipalities from expending tax monies to engage in private business activity. See 76 Op. Att'y Gen. 169, 171 (1987). In order for a municipality to expend funds in connection with a business operation, "such business must involve a public function or be concerned with some element of public utility." Heimerl v.Ozaukee County, 256 Wis. 151, 160, 40 N.W.2d 564 (1949). See 67 Op. Att'y Gen. 304 (1978).
Under section 59.07(1)(a), counties may acquire land for public purposes, such as "county buildings, airports, parks, recreation, highways, dam sites in parks, parkways and playgrounds, flowages" and the like. A pari-mutuel racetrack *Page 81 
under private ownership operated for profit under section562.05(1)(a) is markedly different from these kinds of items and, under Wisconsin law, cannot be deemed to be operated for a public purpose. Therefore, a county could not acquire land under section 59.01(1) if the purpose of the acquisition were solely to lease that land to the owner or operator of a private racetrack licensed under section 562.05(1)(a).
County land initially acquired for valid public purposes, may, however, generally be leased to private entities. See 76 Op. Att'y Gen. at 169-70. Such property may be leased "during the interim period between one specific public use and another." 76 Op. Att'y Gen. at 171. But such property must "not be considered as surplus by the governmental body involved." 76 Op. Att'y Gen. at 170. That is, the property may not be leased for the conduct of private enterprise if there is no conceivable or identifiable need for its future use in connection with some public purpose at any foreseeable point in time. Compare 76 Op. Att'y Gen. 77 (1987).
Any court challenge to a lease of county property would be governed by the principle that "counties are not required by law nor expected to disregard ordinary sound business principles and practices which may reasonably dictate the retention of assets in reasonable amounts to meet the needs of an on-going operation." 76 Op. Att'y Gen. at 170. In S.D. Realty Co. v. Sewerage Comm.,15 Wis.2d 15, 112 N.W.2d 177 (1961), the court upheld a ninety-nine year lease of land on top of a tunnel over a river for ultimate use as a shopping center parking lot. The case suggests, but does not explicitly state, that the sewerage commission had valid reasons for constructing and continuing to maintain the tunnel, since the lease reflected that it "w[ould] have no use for the surface over the tunnel." S.D. Realty, 15 Wis.2d at 19.
Whether property has become surplus is a question of fact.See 76 Op. Att'y Gen. at 171. "[T]he type of activity carried on, the duration of such use, the amount of funds necessarily *Page 82 
expended and control and accountability" are four factors that would likely be evaluated by a reviewing court in determining whether property has become surplus. 76 Op. Att'y Gen. at 171. Circumstances such as the permanence and magnitude of the facility, the size and use of the parcel leased and the length of the lease term therefore would all be considered by a court in determining whether the land might conceivably be put to a public use at some future point in time. Since you have provided no information concerning any of these items, I decline to speculate as to whether any particular lease arrangement would be permissible. In any event, an attorney general's opinion is not an appropriate vehicle for resolution of such questions of fact.See 77 Op. Att'y Gen. Preface, No. 3.C. (1988).
You also ask whether article IV, section 24(5) of the Wisconsin Constitution prohibits a lease arrangement that does not violate the public purpose doctrine and is permissible under chapter 59.
In my opinion, the answer is no.
Article IV, section 24 of the Wisconsin Constitution provides in part as follows:
 (1) Except as provided in this section, the legislature shall never authorize any lottery or grant any divorce.
. . . .
 (5) This section shall not prohibit pari-mutuel on-track betting as provided by law. The state may not own or operate any facility or enterprise for pari-mutuel betting, or lease any state-owned land to any other owner or operator for such purposes.
 (6) The legislature may authorize the creation of a lottery to be operated by the state as provided by law.
These provisions authorize the creation of a lottery to be operated by the state, but preclude the state from participation in all pari-mutuel on-track betting operations. The Legislature *Page 83 
implemented subsection five by enacting section 562.05, which provides in part as follows:
 (1) No person may engage in any of the following activities without a valid annual license issued by the board:
 (a) The ownership and operation of a racetrack at which pari-mutuel wagering is conducted.
 (b) The sponsorship and management of any race on which pari-mutuel wagering is conducted and which is not located at a fair.
 (c) The sponsorship and management of any horse race on which pari-mutuel wagering is conducted and which is located at a fair.
. . . .
 (3m) The board may not accept an application for a license for a race under sub. (1)(c) unless the county board of the county in which that race will be conducted has approved the applicant's sponsorship and management of that race.
. . . .
(a) . . . .
 (b) A license under sub. (1)(c) may authorize horse races on days on which the fair is conducted and for 2 additional periods not to exceed 5 days each. Either or both of the additional periods may be consecutive with the days on which the fair is conducted. . . .
. . . .
 (10) The board shall revoke the license issued under sub. (1)(a) of any person who accepts any public money to construct or operate a racetrack in Wisconsin. This subsection does not apply to any racetrack operated in conjunction with a county fair. *Page 84 
 (11) In this section, "public money" means any direct or indirect gift, grant, financial assistance or guarantee by or from the federal government, state, any political subdivision of the state, or any authority or corporation authorized by the state to borrow funds for a public purpose.
Article IV, section 24(5) of the Wisconsin Constitution applies only to the "state." "A county or governmental agency is created almost exclusively in the view of the policy of the state at large for purposes of political organization and civil administration in matters of state concern." Columbia County v.Wisconsin Retirement Fund, 17 Wis.2d 310, 317, 116 N.W.2d 142
(1962) (citations omitted). Consequently, the term "state" sometimes includes political subdivisions. See Robinson v.Kunach, 76 Wis.2d 436, 444, 251 N.W.2d 449 (1977). Usually, however, the Legislature explicitly includes political subdivisions when it deems them to be encompassed by the term "state." See Robinson, 76 Wis.2d at 445.
I have located no legislative history concerning the meaning of the word "state" in article IV, section 24(5) of the Wisconsin Constitution. But the Legislature's passage of section562.05(1)(b), (c), (3m), (9)(b) and (10) indicates that it did not view the constitutional prohibition as being applicable to counties. In my opinion, the passage of this statute contemporaneously with the constitutional enactment permitting pari-mutuel betting provides a sufficient basis for concluding that the prohibition contained in article IV, section 24(5) of the Wisconsin Constitution does not apply to counties or other political subdivisions.
Although article IV, section 24(5) of the Wisconsin Constitution does not prevent a county from leasing land to a private racetrack developer, any lease transaction entered into by a county must be expressly authorized by statute. See State exrep. Teunas v. Kenosha County, 142 Wis.2d 498, 418 N.W.2d 833
(1988). While such express authority can generally *Page 85 
be derived from section 59.01(1), no lease may violate any statute or administrative rule administered by the racing board, including but not limited to section 562.05(10) and (11). Questions as to whether any particular lease arrangement complies with those statutes or rules are beyond the scope of this opinion and should be directed to that agency.
JED:FTC *Page 86