IN the INTEREST OF I.V., a person under the age of eighteen years:

I.V., Appellant,†

v.

STATE of Wisconsin, Respondent.

Court of Appeals

*No. 82–478. Submitted on briefs September 15, 1982.—*
*Decided October 26, 1982.*
(Also reported in 326 N.W.2d 127.)

† Petition to review denied.

For the appellant, the cause was submitted on the brief of *Mark Lukoff*, first assistant state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J. I.V.,[1] a minor, appeals from orders finding him delinquent and requiring that he pay restitution for items stolen by him and never recovered.[2] The sole issue on appeal is whether the trial court erred in ordering restitution under sec. 48.34(5), Stats., for items stolen in a burglary. We conclude that the language of the statute is broad enough to encompass restitution for stolen property and affirm.

I.V. was adjudged delinquent after admitting that he burglarized the home of Mr. and Mrs. Terrance Reinders. Some of the property was subsequently recovered, but the Reinders testified that certain collector coins, papers, and various items of jewelry were never recovered.

The trial court placed I.V. on probation and ordered restitution at $1,089.87 for "the total unrecovered property less $13.20 for the betterment of [the Reinders']

---

[1] I.V. turned eighteen on June 6, 1982.

[2] I.V. moved the Chief Judge of the Court of Appeals, pursuant to secs. 752.31(3) and 809.41(1), Stats., for an order directing that this appeal be decided by a three-judge panel. The state did not oppose the motion. The motion was granted on April 29, 1982.

basement door." I.V. was ordered to pay $683.75 to the Reinders and $406.12 to their insurer.

I.V. argues that the restitution provision of the Children's Code, sec. 48.34(5), Stats., only allows restitution for property damage and not for property loss. We disagree. The statute in question reads:

(5) *If the child is found to have committed a delinquent act which has resulted in damage to the property of another,* or actual physical injury to another excluding pain and suffering, *the judge may order the child to repair damage to property or to make reasonable restitution for the damage* or injury if the judge considers it beneficial to the well-being and behavior of the child. Any such order shall include a finding that the child alone is financially able to pay and shall allow up to 12 months for the payment. Objection by the child to the amount of damages claimed shall entitle the child to a hearing on the question of damages before the amount of restitution is ordered. [Emphasis added.]

The question, then, is whether the term, "damage to the property of another," is to be construed to include property stolen and never recovered.

The construction of a statute is a question of law. *State v. Clausen,* 105 Wis. 2d 231, 243, 313 N.W.2d 819, 825 (1982). We need not defer, then, to the trial court's conclusion. Our initial inquiry is whether the statutory language is clear or ambiguous. The test for statutory ambiguity is whether the statute is capable of being construed in two different ways by reasonably well-informed people. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). We believe ambiguity exists because reasonable minds could differ over whether "damage to property" self-evidently includes or excludes unrecovered property.

Where one of several interpretations of a statute is possible, we must ascertain the legislative intention from

the language of the statute in relation to its (1) context, (2) subject matter, (3) scope, (4) history, and (5) object intended to be accomplished. *Terry v. Mongin Insurance Agency,* 105 Wis. 2d 575, 584, 314 N.W.2d 349, 353–54 (1982).

## CONTEXT

The language of the statute in context suggests a broad rather than a narrow reading of "damage." Once the trial judge determines that restitution is appropriate, the judge may "order the child to repair damage to property or to make reasonable restitution for the damage or injury . . . ." Although the first phrase in the disjunctive implies partial damage rather than total loss, the second suggests the circumstance where the property would be completely lost or destroyed.

The term "damage" alone is susceptible to broad meaning. Webster's Third New International Dictionary 571 (1961) defines it as "loss due to injury: injury or harm to person, property, or reputation: HURT, HARM." Black's Law Dictionary 351 (rev. 5th ed. 1979) defines it as: "Loss, injury or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property. . . . The harm, detriment, or loss sustained by reason of an injury." Under any of these definitions, "damage" is broad enough to encompass "loss." Simply stated, we can conceive of no damage, injury, or harm to one's enjoyment of one's property more absolute than the permanent deprivation of it. A contrary conclusion would result in the anomalous circumstance that restitution could be ordered for damaged and repairable property, but if the property were damaged beyond repair, it could be argued that the restitution of the value of the property would be, in reality, restitution for loss of the property and

thus, prohibited. Surely the legislature did not intend such an untoward result that is completely inconsistent with the purposes of restitution.

## SUBJECT MATTER

The subject matter of the statutory provision is restitution. Although a statute which allows a trial court to impose terms of redress upon a delinquent juvenile might in some instances be construed as penal in nature and therefore to be strictly construed, restitution provisions ought not to be so classified. "Generally speaking, remedial statutes are those which afford a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries . . . ." 3 J. Sutherland, *Statutes and Statutory Construction*, § 60.02 (C. Sands 4th ed. 1974).

"It is not uncommon for decisions to state the difference [between penal and remedial statutes] in terms of the nature of the evil sought to be remedied by the legislation, according to which it is penal if it undertakes to redress a wrong to the public and *remedial if it undertakes to remedy a wrong to the individual." Id.* at § 60.03. [Emphasis added.]

A restitution statute indisputably affords redress to an individual rather than to the public at large.

Where statutes are both penal and remedial, courts separate the penal provisions from the remedial, strictly construing the provisions establishing penalties and liberally construing the remainder of the act. *City of Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 373–74, 243 N.W.2d 422, 427–28 (1976). If the penal and remedial elements are not easily separable, as where they are included in the same penalty, the proper interpretation is to give liberal construction to the penalties which are

inherent to the remedial aspects of the act, but to strictly construe the provisions creating the wrong. *Id.* at 374, 243 N.W.2d at 428. Here, the "damage to property" term is inherent to the remedial aspect of the act and is, therefore, entitled to liberal construction.

## SCOPE AND HISTORY

The scope and history of this statute are interrelated. The restitution provision was created by sec. 7, ch. 575, Laws of 1955. This section, then sec. 48.34(1)(e), Stats., originally allowed for restitution for violations of laws which "resulted in intentional damage to the property of another . . . ." The note to Senate Bill No. 444 indicated that "[t]his provision is considered by the courts to be desirable in helping them cope with the problem of vandalism by children."

While the scope of the original statute was narrow, it was broadened by sec. 1, ch. 156, Laws of 1977 which removed the word "intentional" from the statute. Since vandalism is intentional damage, it is clear that the amendment broadens the scope of the original provision. Beyond that, our research has revealed no other legislative history pertinent to the question before us.

## OBJECT INTENDED

The object intended to be accomplished by a juvenile restitution statute is open to some dispute. Restitution is most often characterized as rehabilitative: "Properly used, restitution emphasizes accountability for the natural and reasonable consequences of one's acts . . . ." Advisory Council of Judges of the National Probation and Parole Association, Guides for Juvenile Court Judges 81 (1957). *See also* Susmann, *Practitioner's Guide to Changes in Juvenile Law and Procedure,* 14 Crim. L.

Bull. 311, 329 (1978). "Restitution has been viewed as necessary where a comprehensive case study showed it to be a 'therapeutic' means of helping a boy." Thimm, *The Juvenile Court and Restitution,* 6 Crime & Delinq. 279, 283 (1960).

A second frequently discussed object of restitution is redress to victims. "[R]estitution for juvenile offenders . . . symbolizes increased concern for the 'rights' of victims . . . ." Rubin, *Retain the Juvenile Court?,* 25 Crime & Delinq. 281, 287 (1979). Other possible purposes of restitution include less severe sanction for the offender, reduction of demands on the juvenile court system, and reduction of the need for vengeance in a society. *See* Galaway, *Use of Restitution,* 23 Crime & Delinq. 57, 64–65 (1977).

Whatever object or purpose of restitution is espoused, we perceive no logical reason for granting restitution where property is partially damaged, but withholding it where property is lost because of theft or burglary. In light of any of the objects of restitution, we believe no valid distinction can be made between the two situations.

We also reject I.V.'s contention that the more particular language of the adult restitution statute, sec. 973.09 (4m) and (8) (a), Stats., which provides for "the money equivalent of loss resulting from property taken, destroyed, broken or otherwise harmed . . . ," limits by inference the less particular language of the juvenile statute.

The adult provision was created by secs. 2 & 3, ch. 238, Laws of 1979. I.V. argues that the legislature is presumed to have acted with full knowledge of the language of the juvenile provision in so doing. We are not persuaded that the provisions are so closely related so as to give this principle any great vitality.

It is unrealistic to assume that whenever the legislature passes a statute it has in mind all prior acts relating

to the same subject matter, regardless of when they were passed or of whether it refers to them. The legislature may have had in mind some but not all of the statutes relating to the same subject matter when it enacts a statute. Perhaps in the case of a highly important act, the legislature, or more likely, the persons drafting the act, may have considered all the prior statutes relating to the same subject, but in the absence of some evidence that the legislature, or the draftsmen, were cognizant of the statutes sought to be construed with the act under consideration. when enacting it, the presumption should be rejected and the act not so construed until all other means of determining the intent of the legislature have been exhausted. 3 J. Sutherland, *supra,* at § 51.01.

Here, there is no evidence that the legislature was cognizant of the juvenile statute when it enacted the adult statute.

Nor are we certain that the principle of legislative knowledge accrues to I.V.'s benefit here. If the specific statute were to control the general, in accord with the precept of statutory construction, the more particular catalog of the adult restitution statute would govern the less particular language of the juvenile restitution provision. *See Fred Rueping Leather Co. v. City of Fond du Lac,* 99 Wis. 2d 1, 5, 298 N.W.2d 227, 230 (Ct. App. 1980).[3]

However, the rule that the more specific governs the more general is only resorted to when legislative intent is not otherwise clear from a reading of the two provisions and the two provisions are in irreconcilable conflict. *State v. Dairyland Power Cooperative,* 52 Wis. 2d 45, 53, 187 N.W.2d 878, 882 (1971). Here, there is no irreconcilable conflict between the adult and juvenile

---

[3] "Courts may properly take into account the later Act when asked to extend the reach of the earlier Act's vague language to the limits which, read literally, the words might permit." *NLRB v. Allis Chalmers Mfg. Co.,* 388 U.S. 175, 194, *rehg denied,* 389 U.S. 892 (1967).

restitution provisions. The initially restrictive juvenile statute has been significantly broadened by the removal of the word, "intentional;" the adult provision is itself broad. That one provision is more artfully drafted than the other is, standing alone, insufficient reason to narrowly interpret a statute on a subject entitled to a broad construction.

We conclude that "damage to the property of another" is broad enough to encompass unrecovered stolen property and accordingly affirm.

*By the Court.*—Orders affirmed.