ST. JOHN VIANNEY SCHOOL, Nativity of St. Mary's School, St. Patrick's School, St. Paul's Evangelical Lutheran School, St. William's School, Karen M. Roberson, Kevin C. Farley, Mary E. Farley, William B. Schweder, Kathleen A. Schweder, Mary A. Tegt, Nancy S. Arnold and Leland R. Arnold, Petitioners-Respondents,

v.

BOARD OF EDUCATION OF SCHOOL DISTRICT OF JANESVILLE, Appellant.†

Court of Appeals

No. 83–087. *Submitted on briefs May 13, 1983.—Decided June 15, 1983.*
(Also reported in 336 N.W.2d 387.)

---

† Petition to review denied.

142

For the appellant the cause was submitted on the briefs of *T.P. Bidwell* and *Bidwell & Haakenson* of Janesville.

For the petitioners-respondents the cause was submitted on the brief of *Thomas S. Hornig* and *Brennan, Steil, Ryan, Basting & MacDougall, S.C.* of Janesville.

Brief of amicus curiae was filed by *Bronson C. La Follette,* attorney general, and *Daniel D. Stier,* assistant attorney general and *Mary Brooks Fraser,* legal counsel, Department of Public Instruction, on behalf of the State Superintendent of Public Instruction.

Brief of amicus curiae was filed by *James F. Clark* and *Michael J. Julka* and *Isaksen, Lathrop, Esch, Hart & Clark,* on behalf of The Wisconsin Association of School Boards, Inc.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

GARTZKE, P.J. Plaintiffs are five private schools located in the City of Janesville and the parents of five children attending those schools. They seek mandamus requiring the Board of Education of the School District of Janesville to amend its transportation policy to provide that all children in Janesville who live more than two miles from school shall be transported by school bus with door-to-door service. The board has appealed from a judgment directing that if the board uses school bus service to transport public elementary school children who live two or more miles from their public schools, then the board must provide similar transportation service to all private elementary school pupils who live two or more miles from their private schools. We reverse.

The dispositive question is whether the board's transportation policy violates the "reasonable uniformity" requirement in sec. 121.54(1), Stats.[1] The board provides free school bus service for all public and private elementary school children who live two or more miles from their school, except for 200 private school students who are provided free transportation through a city bus system or parent/guardian contracts. We conclude that the "reasonable uniformity" requirement has not been violated.

[1] Section 121.54, Stats., provides in material part:

(1) Subsections (2) and (6) and s. 121.57 do not apply to pupils who reside in cities unless the school they attend is located outside the city but within the boundaries of the school district. Where an annual or special meeting of a common school district or a union high school district, or the school board of a city school district or unified school district determines to provide transportation for such pupils, state aid shall be paid in accordance with s. 121.-58 and there shall be reasonable uniformity in the transportation furnished such pupils whether they attend public or private schools. This subsection does not apply to pupils who reside in a city of the 1st, 2nd or 3rd class with a population exceeding 40,000 unless transportation for such pupils is available through a common carrier of passengers operating under s. 85.20 or ch. 194.

(2) (a) Except as provided in sub. (1), every school board shall provide transportation to and from public school for all pupils who reside in the school district 2 miles or more from the nearest public school they are entitled to attend.

(b)1. Except as provided in sub. (1) or otherwise provided in this subsection, the school board of each district operating high school grades shall provide transportation to and from the school he attends for each pupil residing in the school district who attends any elementary grade, including kindergarten, or high school grade at a private school located 2 miles or more from his residence, if such private school is a school within whose attendance area the pupil resides and is situated within the school district or not more than 5 miles beyond the boundaries of the school district measured along the usually traveled route.

. . . .

The relevant facts are undisputed. Before the 1982–83 school year, the Janesville Board of Education provided free transportation by means of a private school bus company for all elementary school children living in the city two miles or more from their public or private school. Describing that transportation as "yellow school bus" service, the trial court found it was substantially door-to-door, with some students having to walk short distances to a morning pick-up point and from a drop-off point at the end of the school day.

To achieve a $25,000 saving for the 1982–83 school year, the board adopted a new transportation policy for children residing in the city. The board provided free school bus service for children attending public or private schools in kindergarten through grade six who lived in the Quality Inn, Briarcrest, Royal Oaks, Falling Creek and Highway 51 North areas.[2] It provided free transportation to all other public and private school children in those grades living in the city and two miles or more from school, either through the Janesville Transit System buses or through an individual contract with the child's parent or guardian.

The trial court found that all elementary public school children in Janesville live two miles or less from their schools, except those children living in the Quality Inn, Briarcrest, Royal Oaks and Falling Creek areas.[3] Consequently, under the new policy all public school children attending grades kindergarten through six living two or more miles from their schools are transported by

---

[2] The school board also changed its transportation policy for secondary students, grades seven through twelve. The new policy as to those children is not at issue. How the $25,000 savings is apportioned between transportation of elementary and secondary school children is not of record.

[3] The court made no finding whether children residing in the Highway 51 North area lived two or more miles from the school or schools they attend.

school buses, and all private school children in the same grades living in the Quality Inn, Briarcrest, Royal Oaks and Falling Creek areas have the same school bus service. About 200 other private school students live two or more miles from their schools and are not transported by school buses but must use the city bus or may be transported to and from school pursuant to a contract with their parent or guardian.

The trial court held that for the school board to possess the "city option" to provide transportation to school children under sec. 121.54(1), Stats., which in turn must be applied with "reasonable uniformity," city bus service must be "available" to *all* pupils in Janesville. It could not decide from the facts of record whether that service was "available" (in the sense of reasonably accessible and obtainable) to every pupil in Janesville. Accordingly, the court could not decide whether the city option existed. It therefore assumed that the board possessed the option to transport pupils under sec. 121.54(1), and proceeded to examine the facts in light of the statutory requirement of "reasonable uniformity in the transportation furnished."

The trial court said that under the new policy, private school children who must use city buses are exposed to greater hazards than children who enjoy substantially door-to-door service via school buses. School bus service, in the court's view, is more reliable. It said that city bus schedules and routes are established for the general public but school bus schedules and routes are designed to accommodate the schools and their hours. Some private school students must transfer from one city bus to another at a downtown Janesville transfer site. Comparing school bus and city bus service, the court concluded that the new policies of the school board do not provide "reasonable uniformity in the transportation furnished" as

mandated by sec. 121.54(1), Stats., and therefore entered the judgment appealed from.

### 1. *Statutory Context*

The "city option" under sec. 121.54(1), Stats., and its "reasonable uniformity" provision must be seen in the context of the state's general educational policy on free transportation of school children. We therefore examine the context for the particular "reasonable uniformity" requirement applicable here, and other "reasonable uniformity" requirements in sec. 121.54.

Stated broadly,[4] under sec. 121.54(2)(a) and (b), Stats., the general educational policy of this state requires school boards to provide free transportation to and from school for elementary and high school pupils who reside two or more miles from their school, public or private.[5] *O'Connell v. Bd. of Ed., Jt. Dist. #10,* 82 Wis. 2d 728 730–31, 264 N.W.2d 561, 562–63 (1978). The major exceptions to this policy apply to city pupils: First, a school board need not provide transportation to pupils residing in cities, unless the pupil's school is located outside the city but within the boundaries of the school district or

---

[4] This broad statement ignores variations. Although sec. 121.-54(2)(a), Stats., requires school boards to provide transportation to and from *public* schools for all pupils residing in the district two or more miles from the nearest *public* school, sec. 121.54(2)(b)1 requires the board of each district operating high school grades to provide transportation to and from school for each pupil residing in the school district who attends any elementary grade, including kindergarten, or high school at a *private* school located two miles or more from his residence and contains a distance limitation.

[5] The transportation provided is free because under sec. 121.54 (8), Stats., "The cost of providing transportation for pupils under subs. (1) to (6) . . . shall be paid by the school district in which they reside, and no part of such cost may be charged to the pupils or their parents or guardians."

unless the city is of the first, second or third class with a population exceeding 40,000. Sec. 121.54(1), first and third sentences. Second, a school board need not provide transportation to pupils in a city of the first, second or third class with a population exceeding 40,000 if transportation for such pupils is available through a common carrier of passengers operating under sec. 85.20, Stats., or ch. 194, Stats. Sec. 121.54(1), third sentence.[6]

School boards which must provide transportation for pupils who reside two or more miles from school possess the following options:[7]

First, a school board may elect to provide transportation for pupils who reside less than two miles from school, "but if transportation is provided for less than all such pupils there shall be reasonable uniformity in the minimum distance that pupils attending public and private schools will be transported." Sec. 121.54(2)(c), Stats.

Second, a board may elect to provide transportation for pupils residing in the district and attending summer classes, and "[i]f the school board provides transportation for less than all pupils, there shall be reasonable uniformity in the minimum and maximum distances pupils are transported." Sec. 121.54(4)(a), Stats.

---

[6] *See* note 1, *supra.* Section 121.54, Stats., starts with exclusions from the general rule, exceptions to the exclusions, and an option to do what is not required, and then states the general rule. It helps first to read subsec. (2)(a) and (b)1, then the first sentence of subsec. (1) followed by the third and finally the second sentence of that subsection.

[7] The two-mile test does not apply to all children. Under sec. 121.54(3), Stats., a school board must provide transportation for children with exceptional educational needs, as defined in sec. 115.76(3), Stats. (such as mental, physical and emotional disabilities), "regardless of distance, if the request . . . is approved by the state superintendent." Under sec. 121.54(6), the board must provide transportation for certain pupils to attend high school outside the district.

Third, a board may provide transportation "regardless of distance" for children with exceptional educational needs under certain circumstances. Sec. 121.54(4)(b), Stats.

Fourth, a board of a district operating high school grades may provide certain pupils with transportation to vocational, technical and adult educational schools outside the district, unless the distance between the pupil's home and the school is more than fifteen miles, with exceptions. Sec. 121.54(5), Stats.

Fifth, a board may provide transportation for pupils in connection with extracurricular activities under certain circumstances. Sec. 121.54(7), Stats.

A separate option is possessed by city school boards which, by virtue of sec. 121.54(1), Stats., need not provide transportation for city pupils. Under the so-called "city option," a board may elect to provide transportation for pupils residing and attending a school in a city. Sec. 121.54(1), first and second sentences; *Morrissette v. DeZonia*, 63 Wis. 2d 429, 439, 217 N.W.2d 377, 382 (1974). The board does not possess the option, however, in a city of the first, second or third class having a population exceeding 40,000, "unless transportation for such pupils is available through a common carrier of passengers operating under s. 85.20 or ch. 194." Sec. 121.54(1), second and third sentences. If the "city option" is exercised, "there shall be reasonable uniformity in the transportation furnished such pupils whether they attend public or private schools." Sec. 121.54(1), second sentence.

Conditioning the option on the availability of common carrier passenger service makes sense. It is that availability which exempts the city school board from the general policy under sec. 121.54(2), Stats., requiring that pupils be provided free transportation if they live two or

more miles from school. That availability exempts the board from providing free transportation because pupils having a city bus available already have a means of transportation to and from school.

The trial court found that Janesville is a city of the second class and has a population of about 51,000. Janesville Transit System operates in the city and is a common carrier of passengers operating under sec. 85.20, Stats. Hence, if transportation via the Janesville Transit System is "available" to Janesville pupils, then the school board had no duty to transport city pupils but possessed the option to do so under sec. 121.54(1), Stats.

2. *City Option Exists*

Before reaching the reasonable uniformity issue, we first examine the trial court's conclusion that city bus service must be available to every Janesville pupil for the school board to possess the option to transport school children under sec. 121.54(1), Stats. The reasonable uniformity requirement attaches to the option. If the board does not possess the option, then the reasonable uniformity requirement perhaps does not exist. If that requirement does not exist, then the uniformity issue is abstract and need not be decided. As a general rule, the court will not determine abstract principles of law. *Racine v. J-T Enterprises of America, Inc.,* 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974).

The requirement in sec. 121.54(1), Stats., that "transportation for such pupils . . . [be] available through a common carrier of passengers" is ambiguous. A statutory term is ambiguous if reasonable persons could disagree as to its meaning. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). Whether reasonable persons could disagree is a question of law. *See*

*Town of Ringle v. County of Marathon,* 104 Wis. 2d 297, 308, 311 N.W.2d 595, 600 (1981) (court looks to statute to determine if well-informed individuals could be confused). Accepting the trial court's definition of available as meaning reasonably accessible or obtainable, reasonable persons can differ as to whether "available" requires that common carriage be accessible to or obtainable by all or less than all pupils in the city.

The meaning of an ambiguous statute is a question of law which we review independently. *Barth v. Monroe Board of Education,* 108 Wis. 2d 511, 517, 322 N.W.2d 694, 697 (Ct. App. 1982). When determining the meaning of ambiguous statutes, we employ judicial rules of statutory construction to ascertain the intention of the legislature. *State v. Tollefson,* 85 Wis. 2d 162, 167, 270 N.W.2d 201, 203 (1978). We look to the statutory context, subject matter, scope, history and object to be accomplished. *In Interest of I.V.,* 109 Wis. 2d 407, 409–10, 326 N.W.2d 127, 129 (Ct. App. 1982). We search for a reasonable meaning in the statute and avoid absurd results. *Falkner v. Northern States Power Co.,* 75 Wis. 2d 116, 124, 248 N.W.2d 885, 890 (1977).

That city bus service is available to many Janesville pupils is undisputed. The trial court itself found that Janesville Transit System services are available to pupils attending public and private schools, except those living in the Briarcrest, Royal Oaks and Falling Creek areas. Because, however, the purpose of the school transportation statute is to provide for the safety and welfare of children, the trial court held that the services of a common carrier, here a city bus, must be available to *all* city pupils to "trigger" the school board's option to provide free transportation. We reject that conclusion.

Safety and welfare considerations of course underlie the school transportation policy. Article I, sec. 23 of the

Wisconsin Constitution, as amended in 1967 to allow transportation of parochial and private school pupils, provides: "Nothing in this constitution shall prohibit the legislature from providing for the safety and welfare of children by providing for the transportation of children to and from any parochial or private school or institution of learning." The enabling legislation created by ch. 68, Laws of 1967, provided in sec. 1: "PURPOSE. The intent of this act is to provide for the safety and welfare of children by providing for their transportation to and from public and private schools." *Cartwright v. Sharpe,* 40 Wis. 2d 494, 506, 162 N.W.2d 5, 11 (1968), recognized that "[w]hat the constitutional amendment and the enabling legislation accomplished was to provide that the same consideration of safety and welfare should apply to public and private students alike."

Common carrier service is one of several legislatively approved methods of transporting school children. Section 17, ch. 92, Laws of 1967, part of the enabling legislation, created sec. 121.55(1), Stats.,[8] which provides as follows:

School boards may provide transportation by *any* of the following methods:

(a) By contract with *a common carrier,* a taxi company or other parties.

(b) By contract with the parent or guardian of the pupil to be transported. . . .

(c) By contract with another school board, board of control of a co-operative educational service agency or the proper officials of any private school or private school association.

(d) By contract between 2 or more school boards and an individual or *a common carrier.*

---

[8] The provisions of sec. 121.55(1), Stats., are substantially identical to those of its predecessor statute, sec. 40.53(5), Stats. 1965. These options afforded in modes of transportation first appeared in the statutes as sec. 40.34(1)(a)–(f), Stats. 1943, as created by sec. 1, ch. 487, Laws of 1943.

(e) By the purchase and operation of a motor vehicle. (Emphasis added.)

■

When approving common carriage as well as other methods of transporting pupils, the legislature assigned no priorities or preferences. Accordingly, the differences between types of authorized transportation methods provide no basis for the conclusion that common carrier passenger service must because of safety considerations be available to every pupil in a city for a city school board to possess the "city option."

We think it unreasonable to conclude that because of safety considerations the legislature intends that common carrier passenger services must be available to every pupil in a city for a city school board to possess the city option. One absurd consequence of that conclusion is that a city school board must provide free transportation for every pupil living two or more miles from school, merely because city bus service is not available to a few such pupils. The trial court's construction of the statute is also absurd because it implies a legislative determination that city bus transportation is safe if available to all pupils but unsafe if unavailable to a few, contrary to the express approval of common carrier transportation in sec. 121.55(1)(a), Stats. We must avoid unreasonable or absurd readings of a statute. *Falkner, supra.*

■

Accordingly, we conclude that common carrier passenger service need not be available to all city pupils for a school board to possess the option under sec. 121.54(1), Stats. Because Janesville otherwise qualifies on the undisputed facts before us, we conclude as a matter of law that the Janesville school board possesses the option created by sec. 121.54(1).

### 3. *Reasonable Uniformity Exists*

We turn to the requirement in sec. 121.54(1), Stats., that if a city school board exercises its option to transport pupils, "there shall be reasonable uniformity in the transportation furnished such pupils whether they attend public or private schools." As previously noted, the trial court concluded that providing school bus service for some pupils and city bus service for other pupils violated the reasonable uniformity requirement.

When reaching that conclusion, the trial court could not rely on an express statutory requirement that the same type of transportation be used to transport all students. No such express provision exists. In what respect the transportation furnished must be uniform is not defined or stated. Uniformity, the state of being uniform, generally suggests sameness, conformity, equality and homogeneity. Diversity, however, rather than uniformity, characterizes school transportation. Diversity is unavoidable because pupils live at different points and may not attend the same schools. It is impractical, to say the least, to transport all city pupils from a single pickup point over the same route at the same time to the same school. We conclude that the "reasonable uniformity" requirement is ambiguous.

Because the "reasonable uniformity" provision in sec. 121.54(1), Stats., is ambiguous, we utilize rules of statutory construction to determine its meaning. The cardinal rule of statutory construction is, of course, to determine the intention of the legislature. *Kollasch*, 104 Wis. 2d at 563, 313 N.W.2d at 52. In determining that intention, it is reasonable to identify the legislative concern giving rise to the provision to be construed. *State v. Clausen*, 105 Wis. 2d 231, 239, 313 N.W.2d 819, 823 (1982).

We reject the trial court's conclusion that "reasonable uniformity" extends to the type of transportation provided. As noted in the previous section, the legislature approved five alternative modes of transportation in sec. 121.55, Stats. Nothing in the reasonable uniformity requirement of sec. 121.54(1) suggests that if a school board exercises its option to transport pupils, it must select one uniform means of transportation. Nor does sec. 121.55 preclude a school board from providing transportation, required or optional, by any combination of the approved transportation methods. It would be unreasonable to conclude that the "reasonable uniformity" requirement of sec. 121.54(1) abrogates the board's option to provide transportation by any of the methods expressly permitted under sec. 121.55. We conclude that the "reasonable uniformity" requirement is directed at the distance pupils are transported and not at the means of transportation chosen.[9]

The overall concern behind the school transportation statutes is the safety and welfare of pupils. As related to transportation, many factors affect the safety and welfare of pupils, such as weather, highway conditions, topography, etc. The distance a child lives from school is, however, the principal factor with which the statutes are concerned. Other factors being equal, the greater the distance, the greater the danger to the child's safety and welfare. The legislative concern with distance is shown by sec. 121.54(2), Stats., itself, which creates a fundamental division of the school children in this state by distinguishing between children living two or more miles from school and those who live less than two miles from

---

[9] No suggestion is made in this record that the differing means of transportation afforded in this context constitutes a denial of equal protection.

school, generally requiring that only the first group be transported.

The concern in the school transportation statutes with distance explains the reference in sec. 121.54(1), Stats., to pupils who attend public or private schools in connection with the reasonable uniformity requirement. Unless a school board decides to transport every pupil to and from school, the board probably must choose a distance standard when deciding which pupils are eligible for free transportation. Public schools usually serve neighborhoods. Private schools may serve much larger areas, even entire municipalities. As a result, the average distance that pupils live from their public schools may be substantially less than the average distance pupils live from their private schools in the same city. This characteristic disparity might, but for the reasonable uniformity provision in sec. 121.54(1), appear to justify separately classifying public and private school pupils for transportation purposes on the basis of distance.

The reasonable uniformity provision in sec. 121.54(1), Stats., prevents a school board from distinguishing for transportation purposes between public and private school pupils on the basis of the distance they live from school. We read sec. 121.54(1) to mean that whatever the distance standard the board chooses, the distance standard must be reasonably uniform in its application to public and private school pupils.

We recognize that although sec. 121.54(1), Stats., is silent regarding a distance standard in connection with the reasonable uniformity provision, two other provisions in sec. 121.54 specify reasonable uniformity in the distance pupils will be transported. Our analysis must explain why distance standards are specified in those other parts of sec. 121.54 but not in subsec. (1).

Section 121.54(2) (c), Stats., provides in substance that a district school board may determine to provide transportation for all or part of its pupils to and from the nearest public school they are entitled to attend or the private school within whose attendance area they reside, "but if transportation is provided for less than all such pupils there shall be reasonable uniformity in the minimum distance that pupils attending public and private schools will be transported." This provision is part of sec. 121.54(2), which requires transportation for pupils who reside two miles or more from their school. Accordingly, sec. 121.54(2) (c) gives the district or board an option to provide transportation for pupils living less than two miles from school. Because the quoted subsection applies to pupils whom the board has no duty to transport, the reasonable uniformity provision is stated in terms of a minimum distance standard. The legislative concern regarding the city option is with distance generally, not merely the minimum distance children will be transported, because the option arises only when there is no duty to provide transportation, regardless of distance.

The second instance in which distance is a specified standard in connection with a reasonable uniformity requirement is sec. 121.54(4) (a), Stats., which allows a school board to provide transportation for pupils attending summer classes, but, "If the school board provides transportation for less than all pupils, there shall be reasonable uniformity in the minimum and maximum distances pupils are transported." Subsection (4) (a) applies to all schools, those possessing the city option under subsec. (1), and those which must transport all pupils meeting the two-mile standard under subsec. (2). Summer classes may be held at only one or a few of the schools used during the regular school year. Under those circumstances, to avoid disparate treatment of pupils based on distance, it behooves the legislature to specify

that reasonable uniformity should be established not only in the minimum but the maximum distance summer pupils are to be transported.

Plaintiffs do not contend that the board's policy lacks reasonable uniformity as to distance. It is undisputed that the Janesville School Board's policy provides free transportation for all public and private school pupils who live in the city and more than two miles from their school.[10] Accordingly, we conclude on the undisputed facts that the board has complied with the reasonable uniformity requirement of sec. 121.54(1), Stats.

*By the Court.*—Judgment reversed with directions to dismiss the petition for a writ of mandamus.

---

[10] The trial court's finding that all public elementary school pupils who live two or more miles from their schools live in the Quality Inn, Briarcrest, Royal Oaks and Falling Creek areas is uncontroverted. We note that a school board official testified that pupils in the Quality Inn area did not attend the nearest elementary school because of an overcrowding problem at that school, and that the distance to the nearest school is not of record. Further, as indicated in note 2, *supra,* the court made no finding as to the distance pupils who reside in the Highway 51 North area live from their school. There is some indication in the record that the Highway 51 North area was designated a hazardous area, pursuant to sec. 121.54(9), Stats., under which transportation might be provided without regard to the "reasonable uniformity" requirement of sec. 121.54(1). Because, however, issues with respect to the distance students living in the Quality Inn and Highway 51 North areas are transported have not been raised on this appeal, we do not reach those questions. Our decision is based on the uncontroverted facts found by the trial court and the issues as they have been raised by the parties.