Jack N. De BRUIN, Petitioner-Respondent,

v.

STATE of Wisconsin, Respondent-Appellant.

Court of Appeals

*No. 87–0561. Submitted on briefs June 22, 1987.—Decided July 8, 1987.*

(Also reported in 412 N.W.2d 130.)

On behalf of the respondent-appellant the cause was submitted on the brief of *Joseph F. Paulus*, assistant district attorney for Winnebago county.

On behalf of the petitioner-respondent the cause was submitted on the brief of *Louis E. Archambault* of Appleton.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   This case arises under ch. 351, Stats., entitled "Habitual Traffic Offenders." The issue is how to measure the number of offenses committed within a five-year period under sec. 351.02, Stats. In the trial court, the defendant, Jack N. De Bruin, argued that the proper measurement is the number of *convictions* within a five-year period; the state asserted that the proper measure is the number of *violations* occurring within the five-year period, as long as the violations result in a conviction at some time. The trial court agreed with the defendant and found that he was not a habitual traffic offender because he had eleven convictions in five years while the statute mandates twelve. We reverse.

On September 19, 1986, Jack N. De Bruin was convicted of speeding. The offense was actually committed on January 14, 1986. After the conviction, the Department of Transportation revoked his operating privileges for five years. De Bruin then filed a petition for hearing on the revocation pursuant to sec. 351.027, Stats.[1] At the hearing, the trial court concluded that De Bruin had only eleven and not twelve moving

---

[1]Section 351.027, Stats., states in relevant part:

**Hearing on revocations.** (1) Whenever the secretary under authority of s. 351.025 revokes a person's operating privilege, the secretary shall immediately notify the person in writing of the revocation and of the person's right to a hearing on the revocation as provided in sub. (2). The department shall send the notice by 1st class mail to the address most recently provided to the department by the person.

violations within five years. The court measured the violations from the date of conviction as opposed to the date of offense. Using this method, the twelfth conviction was entered five years and one day after the first conviction.

The state subsequently filed a motion to vacate the court's order reinstating De Bruin's operating privileges. The motion was denied and this appeal followed.

■■

Whether sec. 351.02, Stats., provides for measurement from the date of conviction as opposed to the date of violation is a question of statutory construction. Statutory construction involves a question of law. *In re I.V.,* 109 Wis. 2d 407, 409, 326 N.W.2d 127, 128 (Ct. App. 1982). On review, an appellate court need not defer to the trial court's conclusion. *Id.* "The aim of all statutory construction is to discern the intent of the legislature ...." *Green Bay Packaging, Inc. v. DILHR,* 72 Wis. 2d 26, 35, 240 N.W.2d 422, 428 (1976). It is a fundamental rule of statutory interpretation that the "intent of the legislature is a controlling factor." *Milwaukee County v. DILHR,* 80 Wis. 2d 445, 451, 259 N.W.2d 118, 121 (1977) (quoting *Safe Way Motor Coach Co. v. City of Two Rivers,* 256 Wis. 35, 40, 39 N.W.2d 847, 851 (1949)).

■■

Any statutory analysis must begin with the language of the statute itself. *State ex rel. Melentowich v. Klink,* 108 Wis. 2d 374, 379, 321 N.W.2d 272, 274 (1982). The initial inquiry of the court in construing a statute is whether the statutory language is clear or ambiguous. *I.V.,* 109 Wis. 2d at 409, 326 N.W.2d at 128–29. A statute is ambiguous if reasonably well-informed persons could differ as to its

meaning. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). Once the statute is determined to be ambiguous, it is the court's task to "achieve a reasonable construction which will effectuate the statute's purpose." *Melentowich,* 108 Wis. 2d at 380, 321 N.W.2d at 275. In this regard, extrinsic materials, particularly the statute's legislative history, can be a valuable interpretive aid in discerning the legislative intent. *See Milwaukee County,* 80 Wis. 2d at 452, 259 N.W.2d at 121.

Section 351.02(1), Stats., provides that a "'[h]abitual traffic offender' means any person ... whose record ... shows that [he or she] has accumulated the number of convictions for the separate and distinct offenses ... under par. (a) or (b) committed within a 5-year period ... .' "

This statute is silent regarding whether measurement is to be based upon the person's convictions or violations. Thus, the statute is different from the operation of a motor vehicle while intoxicated penalty enhancing statute, sec. 346.65(2)(c), Stats., that unambiguously states that the five-year period will be measured from the date of the violations which resulted in convictions.

Nor can the answer to the issue be determined from the language of the statute itself absent specific language regarding measurement. Reasonable persons could conclude that the adjectival phrases "under par. (a) or (b)" and "committed within a five-year period" both modify the noun "offenses." The state submits that this is the correct interpretation; that one commits an offense; one does not commit a violation.

Conversely, sec. 351.02, Stats., speaks in terms of accumulating convictions which, after a certain number, result in being termed a habitual traffic offender. Therefore, we conclude that the statute is ambiguous. Thus, we apply the rules of statutory construction, looking to the context, subject matter, scope, history and objective to be accomplished, searching always for a reasonable meaning and avoiding an absurd result. *St. John Vianney School v. Board of Educ.,* 114 Wis. 2d 140, 151, 336 N.W.2d 387, 391 (Ct. App. 1983).

The legislative objective assists us. Chapter 351, Stats., is intended to "provide maximum safety for all users of the highways of this state," "deny the privilege of operating motor vehicles to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws, courts and administrative agencies of this state," and "discourage repetition of traffic violations by individuals against the peace and dignity of this state and its political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual traffic offenders who have been convicted repeatedly of traffic law violations." Sec. 351.01, Stats. In light of the legislature's language highlighting the repetition of traffic *violations,* as opposed to convictions, by individuals, we conclude that the more reasonable interpretation of sec. 351.02(1), Stats., is that the measurement be based upon the number of violations rather than the number of convictions.

Further support for this interpretation can be found in the legislative history of ch. 351, Stats. A

fiscal estimate accompanying AB 760, 1979–80 Sess., ch. 333, Laws of 1979, addressed the idea that a person must be convicted of four or more serious offenses *or* twelve or more moving violations (including serious offenses) within a five-year period. The fiscal estimate said, "[a]lmost no one will have four serious offenses or twelve moving violations in one year." Fiscal Estimate, AB 760, 1979–80 Sess., ch. 333, Laws of 1979. Thus, the legislative history of the statute clearly supports the conclusion that the legislature was thinking in terms of offenses and violations not convictions.

Our construction is also confirmed by administrative practice. The Department of Transportation certified De Bruin's driving record as that of a habitual traffic offender to the district attorney. The department administers the statute in the sense that the secretary of the department must apply it when certifying the conviction record "of any person whose record brings him or her within the definition of a habitual traffic offender." Sec. 351.03, Stats. If the question is one of first impression, as here, we accord due weight to the agency's statutory construction. *Arrowhead United Teachers Org. v. WERC,* 116 Wis. 2d 580, 594, 342 N.W.2d 709, 716 (1984).

Finally, as a matter of public and proper judicial administration, our construction of the statute supports the legislative purpose. Under the construction of the statute advocated by the defendant, it would serve the interest of habitual offenders to delay the trial of an offense through the filing of timely substitution of judge motions, through controlled adjournments and the like. Such a result would clearly

frustrate the obvious legislative intent. *See State v. Banks,* 105 Wis. 2d 32, 49, 313 N.W.2d 67, 75 (1981).

We conclude that the proper reading of sec. 351.02(1), Stats., is that the phrases "under par. (a) or (b)" and "committed within a 5-year period" both modify the noun "offenses." When the statute refers to the term convictions, it means only that the violations must result in convictions before they may be counted as one of the twelve offenses committed within five years. We therefore reverse the order reinstating De Bruin's operating privilege and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.