Lisa K. ALBERTE, Plaintiff-Appellant,

v.

ANEW HEALTH CARE SERVICES, INC. and Sally Sprenger,
Defendants-Respondents.†

Court of Appeals

*No. 96–3225. Submitted on briefs May 4, 1998.—Decided
October 20, 1998.*

(Also reported in 588 N.W.2d 298.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John D. Uelmen*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Arthur E. Beck* and *Katherine L. Williams* of *Beck, Chaet, Loomis, Molony & Bamberger, S.C.*, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

FINE, J. Lisa K. Alberte appeals from the trial court's grant of summary judgment dismissing Sally Sprenger from Alberte's action under the Americans

with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

The facts material to this appeal are neither disputed nor complicated. Anew Health Care Services, Inc., provides skilled nursing services to persons in the community. Alberte used to work for Anew Health Care. She was fired by Sprenger, who was president, administrator, and 47.5% owner of Anew Health Care. Alberte claims that Sprenger fired her because of Alberte's disability. She seeks to hold Sprenger personally liable, in addition to seeking damages from Anew Health Care. Sprenger contends that she cannot be personally liable for what she did as an officer, part owner, and employee of Anew Health Care. The trial court agreed. We reverse.

The Americans with Disabilities Act makes it illegal for any "covered entity," which is defined to include an "employer," 42 U.S.C. § 12111(2), to "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). The Act defines "employer" to mean, as material to this appeal, "a person engaged in an industry affecting commerce" who employs at least a specified minimum number of employees "and any agent of such person." 42 U.S.C. § 12111(5)(A). "Person" includes a "corporation." 42 U.S.C. § 12111(7) (adopting the definition in 42 U.S.C. § 2000e(a)). Anew Health Care admits that it is an "employer"; Sprenger admits that she is an "agent."

The Americans with Disabilities Act gives to anyone claiming to be a victim of a violation under it the remedies set out in Title VII of the Civil Rights Act. 42 U.S.C. § 12117(a). Title VII also defines "employer" to include "any agent" of the "person" deemed to be an "employer." 42 U.S.C. § 2000e(b). A party whose rights

3

under the Americans with Disabilities Act are intentionally violated may recover compensatory and punitive damages. 42 U.S.C. § 1981a.

As noted, this case was decided on summary judgment. Our review of the trial court's decision is, therefore, *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Moreover, whether the Americans with Disabilities Act permits imposition of personal liability on one who is an "employer" by virtue of her status as an "agent" of an "employer" is an issue of law that we also review *de novo*. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–365, 560 N.W.2d 315, 317 (Ct. App. 1997) (interpretation of statutes presents legal issues that are decided *de novo* by appellate courts).

We begin our analysis by looking at the statute to determine whether its language is clear or ambiguous. *De Bruin v. State*, 140 Wis. 2d 631, 635, 412 N.W.2d 130, 131 (Ct. App. 1987). If it is clear, we must apply its plain meaning. *DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982). Although federal cases applying federal law can be helpful to our analysis, we are only bound by the interpretation given to federal law by the United States Supreme Court. *See State v. Webster*, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474, 478 n.4 (1983). The Supreme Court has not yet decided whether the Americans with Disabilities Act permits imposition of personal liability on an "agent." It is also an issue of first impression in Wisconsin. Significantly, the Supreme Court, as do we in Wisconsin, recognizes that the legislature speaks through the words it uses, and those words must be enforced as written, *United States v. Salerno*, 505 U.S.

4

317, 322 (1992) (In enacting the rule against hearsay and its exceptions, Congress "presumably made a careful judgment"; "To respect its determination, we must enforce the words that it enacted."), unless, of course, constitutional principles intervene. We analyze Alberte's appeal with this in mind.

As material to this appeal, the Americans with Disabilities Act prohibits discrimination against employees by both the "employer" and the employer's "agent," who, by virtue of the statute, is also deemed to be an "employer." 42 U.S.C. § 12111(5)(A). *See also* Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b) ("employer" includes "any agent" of the "person" deemed to be an "employer"). 42 U.S.C. § 1981a permits an employee suffering intentional discrimination because of his or her disability to recover, if certain criteria that are not material here are met, compensatory and punitive damages from a "respondent." "Respondent" includes an "employer." 42 U.S.C. § 2000e–5(b) (incorporated into the Americans with Disabilities Act by 42 U.S.C. § 12117(a)). Anew Health Care is an "employer"; this is not disputed. Sprenger admits that she is an "agent" as that word is used in both the Americans with Disabilities Act and Title VII of the Civil Rights Act. She is, therefore, an "employer" as that word is used in the Americans with Disabilities Act, and is thus a "respondent" for the purposes of 42 U.S.C. § 1981a.

Sprenger argues that the trial court properly dismissed her from Alberte's lawsuit because most of the federal courts that have considered the issue have held that imposition of personal liability on "agents" is not warranted despite the statutes' Tinkers-to-Evers-to-Chance definitional syllogism ("agent" = "employer" = "respondent"). Those courts, however, generally recog-

5

nize that they are disregarding the literal statutory language in favor of what they see as either a contrary congressional intent or a contrary public policy. *See, e.g., Wathen v. General Electric Co.*, 115 F.3d 400, 404, 405 (6th Cir. 1997) (citing cases) ("We concede that 'a narrow, literal reading of the agent clause in § 2000e(b) does imply that an employer's agent is a statutory employer for purposes of liability.' ") (quoted source omitted).

Typical of the authorities upon which Sprenger relies, and one that advances all of her arguments against personal liability, is *United States Equal Employment Opportunity Commission v. AIC Security Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995), which, as here, was an action under the Americans with Disabilities Act. *See id.*, 55 F.3d at 1278. We analyze these arguments in turn, focusing, in main, on *AIC Security*.

Recognizing that imposition of personal liability on an "agent" who violates the Americans with Disabilities Act is required by the Act's "plain language," *AIC Security* held that "the actual reason for the 'and any agent' language in the definition of 'employer' was to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents." *Id.*, 55 F.3d at 1281. Neither *AIC Security*, however, nor the two cases upon which it relies, *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) (an Age Discrimination in Employment Act case), *cert. denied*, 513 U.S. 1058, and *Miller v. Maxwell's International Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (an action brought under both Title VII of the Civil Rights Act and the Age Discrimination in Employment Act), *cert. denied*, 510 U.S. 1109, explain why that language was needed to have common-law *respondeat superior* prin-

6

ciples apply under the Americans with Disabilities Act; entities can act only through humans, and are generally responsible for the acts of employees and agents that are within the scope of the employment or agency. *See* RESTATEMENT (SECOND) OF AGENCY § 219 (1957). Indeed, *Vinson v. Taylor*, 753 F.2d 141, 150–152 (D.C. Cir. 1985), imposed absolute liability under Title VII of the Civil Rights Act on the employer for the acts of its agent/employee, holding that even broad *respondeat superior* liability was too limited, but the Supreme Court reversed. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 69–73 (1986). *Meritor* viewed the use of the "agent"-equals-"employer" language in Title VII as reflecting congressional intent to limit employer liability:

> We therefore decline the parties' invitation to issue a definitive rule on employer liability, but we do agree with the [Equal Employment Opportunity Commission] that Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), *surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible.* For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency §§ 219–237 (1958) [*sic*]. For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. *Ibid.*

*Id.*, 477 U.S. at 72 (emphasis added); *see also Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2278 (1998)

(recognizing *Meritor*'s holding that "an employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination"); *Gebser v. Lago Vista Indep. School Dist.*, 118 S. Ct. 1989, 2004 n.9 (1998) (Stevens, J., dissenting) (*Meritor* viewed reference to " 'agent' as a limitation on the liability of the employer").

We do not see Congress's decision to include certain employees within the term "employer" as solely a round-about way of incorporating common-law *respondeat superior* principles of master/servant liability. Certainly, if that is all it intended to do, Congress could have used language that did not also make the agent liable for his or her unlawful conduct. Moreover, an employer is not necessarily liable for unlawful discriminatory acts of its employees if those acts create a hostile work environment but do not result in adverse "tangible employment action." *Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257, 2268–2269 (1998); *see also Faragher*, 118 S. Ct. at 2292 (In an environmental-harassment case under Title VII where claims are predicated on acts of supervisory employees, it is "an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided."); *cf. Burlington Industries*, 118 S. Ct. at 2269 (under Title VII, "tangible employment action taken by the supervisor" is, automatically, "the act of the employer"). Thus, where vicarious liability is not automatic, giving immunity to those guilty employees as well as to the innocent employer would leave victims of unlawful discrimination without *any* chance

8

to recover compensatory or punitive damages. This could have hardly been Congress's intent when it wrote this sweeping legislation to prevent discrimination in the workplace and give to victims of such discrimination effective remedies to make them whole. If the dissent's "Hobson's choice" analysis (Dissent at 16) is correct, the employee directed to discriminate in violation of law has no incentive not to comply with the employer's unlawful order. This, clearly, runs counter to congressional intent to root out discrimination trunk *and* branch. After all, the " 'primary objective' " of laws imposing liability for unlawful discrimination, "like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm." *Faragher*, 118 S. Ct. at 2292.[1]

The second basis for *AIC Security*'s conclusion that Congress did not intend that "agents" be personally liable for the consequences of their violations of the Americans with Disabilities Act was congressional concern that small employers either not be subjected to liability at all or have their liability limited. *See AIC Security*, 55 F.3d at 1281. *AIC Security* concluded that imposition of liability on individuals, with presumably limited resources, would be inconsistent with Congress's desire to protect small business. *Ibid.* This is reading tea leaves. The legislative history supports an equally persuasive reason for the limitation on the size of employers covered by the Americans with Disabilities Act (as measured by the number of their employees)—the need to establish some criteria that

---

[1] Moreover, an employee who is fired for failing to discriminate in violation of state or federal statute may have a wrongful-discharge claim against his or her employer. *See Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 140–141, 396 N.W.2d 167, 169–170 (1986).

would withstand commerce-clause scrutiny. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1322 (2d Cir. 1995) (Parker, J., dissenting) (citing legislative-history materials) (Title VII of the Civil Rights Act). Nevertheless, we are bound by the statute's clear language, and the competing inferences that can be drawn from legislative history remind us of Justice Felix Frankfurter's advice to apply "the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." *Greenwood v. United States*, 350 U.S. 366, 374 (1956). Under the statute, an "agent" equals an "employer," which, in turn, equals a "respondent," and 42 U.S.C. § 1981a makes a "respondent" liable for compensatory and punitive damages.

The third reason given by *AIC Security* for concluding that individual liability for an "agent" was not intended by Congress is that 42 U.S.C. § 1981a has what *AIC Security* notes is "a sliding scale of caps, increasing the possible award as the number of employees of a liable party increased." *Id.*, 55 F.3d at 1281. Thus, the lowest cap is $50,000 "in the case of a respondent who has more than 14 but fewer than 101 employees." 42 U.S.C. § 1981a(b)(3)(A). *AIC Security* misreads this provision, however, when it concludes that "Congress enacted no cap for individuals." *Id.*, 55 F.3d at 1281. As we have seen, an "agent" *is* an "employer" *is* a "respondent," and the number of employees sets the applicable cap—the cap applies to both individuals who are "agents" under the Americans with Disabilities Act and the businesses for which they work. That the cap might subject an "agent" of a large business to greater potential liability than a counterpart working for a smaller business reflects Congress's attempt to balance various competing considerations that inhere in the crafting of complex legislation to use

government power to redress social inequities. Presumably Congress wanted to expose those who discriminate while working for large enterprises to greater potential liability than those who discriminate while working for smaller entities because not only might their individual resources be larger but the prospects of meaningful employer-reimbursement might be better.[2] In any event, this is what the clear language of the statute requires. Although the congressional scheme might strike some as flawed, and the dissent as "nonsensical," *see* Dissent at 16, we do not have license to ignore the law. Moreover, it would, in our view, be "unjust" (to use a theme that runs through the dissent's analysis) to hold liable innocent employers (and, as a result, also penalize its innocent employees by diverting resources to pay damages caused by the unlawful discrimination of one of their co-workers) but give immunity to guilty agents; persons who unlawfully discriminate should be liable for the damages they cause, and Congress has so provided.

 In sum, we conclude that under the clear language of the Americans with Disabilities Act and Title VII of the Civil Rights Act, Sprenger is an "employer" as that word is used in the Americans with Disabilities Act, and is thus a "respondent" for the purposes of 42 U.S.C. § 1981a.

*By the Court.*—Order reversed.

CURLEY, J. *(dissenting).* The majority has determined that the trial court erred in finding that the Americans with Disabilities Act (ADA) imposes no per-

---

[2] The parties do not argue, and this appeal therefore does not present, equal-protection issues.

sonal liability against an agent/employee who violates the ADA. I respectfully dissent and would affirm the trial court.

Although the United States Supreme Court has not ruled on the issue presented by this case and this issue is one of first impression for this court, the issue has been addressed by numerous federal courts. The overwhelming majority of the federal circuit courts have decided that agent/employees are not individually liable for violations of the ADA. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 404 (6th Cir. 1997) (collecting cases). While appellate courts are not bound by federal court decisions interpreting federal law, except those of the United States Supreme Court, *see State v. Mechtel*, 176 Wis. 2d 87, 94–95, 499 N.W.2d 662, 666 (1993), these decisions do constitute persuasive authority, *see Streff v. Town of Delafield*, 190 Wis. 2d 348, 356–57, 526 N.W.2d 822, 825 (Ct. App. 1994).

The majority dismisses *Wathen* and the other federal courts' interpretation of the ADA, claiming that "[t]hose courts, however, generally recognize that they are disregarding the literal statutory language in favor of what they see as either a contrary congressional intent or a contrary public policy." *See* Majority op. at 5–6. *Wathen*, however, merely conceded that the statute can be read in "a narrow, literal" way, and that such a reading produces an odd result, not faithful to the true meaning of the statute. *See Wathen*, 115 F.3d at 405. In my opinion, the court's concern in *Wathen*, that the statute would be read in "a narrow literal" way, is exactly what occurred here. The majority has seized upon a literal reading of the statute and, as a consequence, ignores the intent of the law, the history of the remedial schemes available under the ADA, Title

12

VII, and the ADEA, and produces an unjust result.[1] Instead of putting emphasis on the single clause "and any agent of such person," the better method of statutory construction would have been to heed the advice given by the United States Supreme Court in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987): "[I]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id.* at 51 (citations and quotation marks omitted). By failing to "look to the provisions of the whole law, and to its object and policy," *Wathen*, 115 F.3d at 405, the majority has produced a result clearly at odds with the express intent of Congress.

A review of the entire law leads to the inescapable conclusion that Congress did not intend for agent/employees to be held personally liable in ADA litigation. Although the bill's definition of "employer" includes the problematic language "and any agent of such person," as noted in *Wathen*, 115 F.3d at 405–06 (quoting *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (alteration in original)), most "courts addressing this issue have concluded that '[t]he obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute.'" Here the majority's decision disregards the weight of authority on this issue and, instead, substitutes its

---

[1] As explained in *United States EEOC v. AIC Security Investigation*, 55 F.3d 1276, 1279–80 (7th Cir. 1995) (citations omitted), "The ADA's definition of 'employer' mirrors the definitions of 'employer' in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act (ADEA). Courts routinely apply arguments regarding individual liability to all three statutes interchangeably." Thus, many of the claims in the cited cases have been made under Title VII or the ADEA.

13

own analysis. I would adhere to the view of the majority of courts that the inclusion of the phrase "and any agent of such person" was done for reasons other than exposing agent/employees to personal liability.

Further, both the history of the law and the policy behind it indicate that Congress did not intend agent/employees to be personally liable under the ADA. Notably, the bill exempts employers with less than fifteen employees from exposure. In *United States EEOC v. AIC Security Investigation, Ltd.*, 55 F.3d 1276, 1279–81 (7th Cir. 1995), the court remarked that the fifteen employees rule is inconsistent with holding agent/employees personally liable. The court explained that this fifteen-employee minimum in the ADA's definition of "employer" was done because Congress was intentionally protecting small entities with limited resources from liability and "[t]hat limitation struck a balance between the goal of stamping out all discrimination and the goal of protecting small entities from the hardship of litigating discrimination claims." *Id.* at 1281 (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d at 587). Given this goal, the *AIC Security* court then concluded that Congress could not reasonably have intended to create personal liability against agent/employees because, as individuals, they would experience even greater hardship litigating discrimination claims. The majority decision dismisses this thoughtful analysis by remarking, "[t]his is reading tea leaves," and then, relying solely on the dissent in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1322 (2d Cir. 1995), suggests the limitation was added simply to survive commerce clause scrutiny. I disagree. Common sense dictates that Congress could not have intended to impose personal liability on all agent/employees while at the same time imposing a fifteen-employee mini-

14

mum on employers because of its concern about the hardship of litigation on small entities.

The history of available remedies also supports this view. Before the passage of the Civil Rights Act of 1991, successful litigants could only expect reinstatement and back-pay, remedies not ordinarily within the control of an agent/employee to grant. When compensation and punitive damages were added to the list of remedies, they were made subject to a sliding scale of caps dependent on the size of the employer. Not only do the original two remedies of back-pay and reinstatement point to the exclusion of agents/employee liability, but also the caps imposed through the Civil Rights Act of 1991 strongly suggest that Congress intended no individual liability. *See AIC Security*, 55 F.3d at 1281. This is so because the sliding scale of caps manifests Congress's policy decision to punish on the basis of size. Although the *AIC Security* court interprets the sliding scale of caps as placing no liability on the agent/employees because "Congress enacted no cap for individuals," *id.*, the majority argues that the *AIC Security* court misread the law because agent/employees are actually subject to the same caps as employers. Assuming, *arguendo*, that the caps do apply to agent/employees, this interpretation undercuts Congress's crafting of the penalties based upon the violator's potential resources. This is so because an agent/employee found liable will be subject to the cap based upon the size of an agent's employer rather than the individual's resources. Further, the egregiousness of the agent/employee's actions would play no part in determining the maximum penalties. *See id.* The majority discounts this injustice by commenting that "[p]resumably Congress wanted to expose those who discriminate while working for large enterprises to

15

greater potential liability than those who discriminate while working for smaller entities." *See* Majority op. at 11. In dismissing this obvious nonsensical and unjust result, the majority merely remarks that the court has no license to ignore or rewrite the law, even if the law may yield undesirable results. Under the majority's reasoning, agent/employees whose employers instruct them to discriminate are faced with a Hobson's choice—the prospect of defying an employer's orders and risking the loss of their jobs, or following their employer's orders and exposing themselves to personal liability.

I would adopt the Ninth Circuit's remark in *Miller v. Maxwell's International, Inc.*, 991 F.2d at 587, that it is "inconceivable" that a Congress concerned with protecting small employers with limited resources would permit civil liability to run against individual employees with even more limited resources.

Further, *Maxwell* teaches, "if Congress had envisioned individual liability . . . it would have included individuals in this litany of limitations and discontinued the exemption for small employers." *Id.* at 587–88 n.2.

In sum, I am not persuaded by the majority's argument. Read as a whole, the statutory scheme supports no individual liability because congressional intent was not to hold individuals personally liable, but rather, to correct a perceived workplace evil by permitting recovery from employers who meet the minimum requirements, and even then, recovery was limited based upon the size of a company. The majority's decision results in great disparities in individual liability between individuals acting identically, but working at differently sized companies. Like the court in the *AIC Security* case, I find it "highly improbable" that Con-

gress intended individual agent/employees to "be liable for any amount, be that $5 or $5 billion." *See AIC Security*, 55 F.3d at 1281 n.6. Nor do I find it conceivable that "Congress silently intended to abruptly change its earlier vision through an amendment [the Civil Rights Act of 1991] to the remedial portions of the statute alone." *See id.* at 1281. Like the overwhelming majority of federal circuit courts, I believe what the majority sees as the imposition of individual liability is actually nothing more than the assurance of respondeat superior liability against employers for the acts of their agent/employees. Thus, I respectfully dissent.