TIM CULLEN, Chairperson Senate Organization Committee
You have asked whether section 121.555, Stats., applies to only those drivers of vehicles which are supplied and contracted for by the school board or whether it applies to all drivers transporting pupils to and from curricular and extracurricular activities. Your primary concern appears to be whether the scope of this section covers volunteer drivers, particularly parents, who help out by transporting pupils on field trips or to other extracurricular activities.
Section 121.555(1)(a) provides:
 A school board or the governing body of a private school may provide pupil transportation services by the following alternative methods:
 (a) A motor vehicle transporting 9 or less passengers in addition to the operator.
It is my opinion that this section of the statutes applies to all drivers transporting pupils other than only their own children to and from curricular and extracurricular activities, if such transportation has been provided by the school board.
Section 121.55 is entitled "[m]ethods of providing transportation," and specifies the various entities or persons with whom school boards may contract to provide transportation. All methods specified under this section require a contract except for subsection (1)(e) which allows a school board to purchase and operate a motor vehicle.
Section 121.555 is entitled "[a]lternative methods of providing transportation." Neither of the methods delineated in this section *Page 147 
mention the word "contract." Section 121.555 appears, therefore, to clearly not be limited to drivers who contract with the school board.
Section 121.555 is, however, limited in application to those methods of transportation which are "provided" by a school board. When a school plans a field trip or extracurricular activity and the principal or other authorized person makes arrangements with parents to voluntarily transport the pupils participating in such an event, this appears to be transportation provided by the school. However, where a parent, without request, solicitation or approval by a school board or authorized administrator, voluntarily transports pupils to an extracurricular event, section 121.555 would not apply. Such a situation may, for example, arise when a parent transports pupils to participate as spectators in an out-of-town athletic event.
Section 121.555 specifies that a school board may provide pupil transportation services. Section 121.54(7)(a)4., which also deals with provision of transportation for extracurricular activities, lists as one of the conditions for the exercise of such power that "[t]he school principal or other person with comparable authority authorizes such use." Subsection (7)(a)1. of that statute refers to the use of a motor vehicle under section121.555(1)(a). In my opinion, a school board may delegate its authority to provide transportation under section 121.555 to a school principal or other person with similar authority.
In determining the intent of the Legislature, it is reasonable to identify the legislative concern which gave rise to the provision to be construed. St. John Vianney Sch. v. JanesvilleEd. Bd., 114 Wis.2d 140, 336 N.W.2d 387 (Ct.App. 1983). "The overall concern behind the school transportation statutes is the safety and welfare of pupils." St. John Vianney School,114 Wis.2d at 155. Also see Morrissette v. DeZonia, 63 Wis.2d 429,440, 217 N.W.2d 377 (1973). Although the Morrissette case involved the general provision of bus transportation under section 121.54, it is significant to note that the court concluded that exceptions to the provision of transportation should be narrowly construed.
In determining the meaning of an ambiguous statute, a court may also look at the statutory context, subject matter, scope, history and object to be accomplished. In Interest of I.V.,109 Wis.2d 407, *Page 148 
407, 409-10, 326 N.W.2d 127 (Ct.App. 1982). It is proper to consider the Legislative Reference Bureau's analysis in construing a statute. Tanck v. Clerk, Middleton Jt. School Dist.,60 Wis.2d 294, 305, 210 N.W.2d 708 (1973); Czaicki v. Czaicki,73 Wis.2d 9, 16, 242 N.W.2d 214 (1976).
1983 Wisconsin Act 127, which created section 121.555, was introduced as 1983 Assembly Bill 480. The analysis by the Legislative Reference Bureau describes this bill as a reorganization and revision of the law relating to transportation services provided by schools for pupils and transportation services for elderly or handicapped persons. In part, this analysis states:
 As an alternative to using school busses, school boards or governing bodies may elect to provide pupil transportation in a motor vehicle transporting the operator and 10 or less passengers. A similar provision exists in current law for transport of up to 9 passengers in cars or station wagons. If the vehicle is owned or leased by the school or a school bus contractor the current school bus insurance requirements are applicable, otherwise the vehicle must be insured for $10,000 property, $25,000 each individual and $50,000 total accident. The operator must have a valid Wisconsin operator's license and be at least 18 years old. The current requirements for a physical examination and driving records are applicable. The vehicle must be inspected every year and may not be used to transport persons in excess of the permanent forward-facing seats in the vehicle.
(Emphasis added.)
This same bill also defined "human service vehicle" (HSV) which is used to transport elderly or handicapped persons. Vehicles driven by volunteers are expressly excluded from the definition of a HSV and are not subject to the insurance requirements for such vehicles. No such exclusion is made for vehicles driven by volunteers transporting pupils under section 121.555(1)(a)1.
By reason of the rule of respondeat superior a public body, including a school district, is liable for the torts of its officers, agents and employes occurring in the course of business of such public body. Holytz v. Milwaukee, 17 Wis.2d 26, 40,115 N.W.2d 618 (1962). When a school board, pursuant to statutory authority under section 121.555, arranges for a driver to transport pupils to an outside school activity, a court may conclude such a driver is an *Page 149 
agent of the district school for whose actions the municipality could be liable.
An unfortunate situation would also arise if a court found that the driver was not an agent, but was instead an independent contractor and the driver did not have adequate insurance coverage. The municipality would not be liable for the actions of an independent contractor. A pupil injured in such circumstances would have no remedy available from which to recover compensation. This outcome would be inconsistent with the legislative purpose to provide for the welfare of school children.
To conclude that parents transporting pupils other than only their own children are included within the scope of section121.555 is also consistent with the intent of the Legislature in requiring a motor vehicle used as a school bus or other vehicle contracted for by a school board to be covered by liability insurance.
Section 121.53 is the general statute imposing insurance requirements on vehicles transporting pupils. The purpose behind this section is to protect a school district from loss due to the torts of its agents. Subsection (1) provides that no motor vehicle may be used as a school bus unless liability insurance of specified limits is maintained thereon. Subsection (2)(b) provides that insurance shall cover the transportation of pupils and other persons "in connection with any extracurricular school activity authorized by and made in compliance with s. 121.54(7)." Subsection (5) provides:
Subsections (1) to (4) do not apply to:
 (a) A motor vehicle owned or operated by a parent or guardian transporting only his own children, whether or not any contract is made with or compensation paid to the parent or guardian for such transportation by a school board.
 (b) A motor vehicle operated by a common carrier certificated under ch. 194, where such motor vehicle is used under contract pursuant to this subchapter, if the common carrier has complied with s. 194.41 or 194.42.
 (c) A taxicab regulated by a municipal ordinance under s. 349.24 when used to transport pupils.
Section 340.01 (56) defines "school bus." Subsection (a) states that a school bus is a motor vehicle which carries ten or more passengers in addition to the operator or a motor vehicle painted in *Page 150 
accordance with section 347.44(1). Subsection (b) excludes from the definition of a school bus:
 1. A motor vehicle owned or operated by a parent or guardian transporting only his or her own children, regardless of whether a school has made a contract with or paid compensation to such parent or guardian for such transportation.
 2. A motor vehicle operated as an alternative method of transportation under s. 121.555.
 3. A motor bus operated for purposes specified in par. (a)2.
 4. A motor vehicle operated in an urban mass transit system as defined in s. 85.20(1)(e) and (f).
Busses transporting pupils to extracurricular activities which are not under a written contract with the school must still comply with the school bus regulations prescribed by the motor vehicle department. 41 Op. Att'y Gen. 227 (1952). This opinion cites Verbeten v. Huettl, 253 Wis. 510, 34 N.W.2d 803 (1948), in which the court concluded that statutory authority vesting the motor vehicle department with the power to regulate the transportation of persons by motor vehicle in the interests of public safety is not limited to regulating only those school busses operating under contract.
There is nothing in the statutes to suggest that parents of school children who volunteer to transport pupils, other than only their own children, to and from extracurricular activities authorized by the school district are not intended to be covered by the insurance provisions found in section 121.555 (2)(a). In fact, as certain school transportation statutes twice specifically exclude parents who transport only their own children, it appears that parents who transport other childrenare intended to be included. This result is consistent with the principles of statutory construction that the Legislature would not have used language which was clear on the face of a statute, if it did not intend it to have meaning, State ex rel. Opelt v.Crisp, 81 Wis.2d 106, 260 N.W.2d 25 (1977); and statutes should be construed in a manner which avoids making any word or phrase superfluous. Green Bay Broadcasting v. Green Bay Authority,116 Wis.2d 1, 19, 342 N.W.2d 27 (1983).
Looking at all the statutes governing the transportation of pupils, it is clear that insurance requirements are not limited to those operators of vehicles meeting the statutory definition of *Page 151 
school bus, nor are they limited to operators under contract or vehicles owned by the school system.
On the other hand, section 121.555(2)(b) and (c)4., relating to motor vehicle inspection and operator requirements respectively were recently amended to add language which makes it clear that subsection (2)(b) and subsection 4. of (2)(c) are not intended to apply to volunteer drivers. As amended by 1985 Wisconsin Act 240, these subsections now read:
 121.555(2)(b) Inspection. If the vehicle is owned or leased by a school or a school bus contractor or is operated by a school district employe, it shall be inspected annually for compliance with the requirements of s. 110.075, ch. 347, and the rules of the department of transportation. The owner or lessee of the vehicle is responsible for the annual inspection.
 (c)4. Shall submit at least once every 3 years to the school a medical opinion in such form as the school may prescribe that the operator is not afflicted with or suffering from any mental or physical disability or disease such as to prevent the operator from exercising reasonable control over a motor vehicle. The examination report prescribed in s. 118.25(2) and (4) may be used to satisfy this requirement. This subdivision applies only if the vehicle used under sub. (1) is owned or leased by a school or a school bus contractor or is operated by a school district employe.
It is my opinion that section 121.555(2)(c)1., 2., 3. and 5. and (d) continue to apply to volunteer drivers transporting pupils other than only their own children. By specifically adding the language "owned or leased by a school or a school bus contractor or is operated by a school district employe" to only certain portions of section 121.555, the Legislature appears to have intended that it is only the requirements of those subsections which are limited in application.
I previously issued an opinion on December 8, 1976, that the legislative framework found in the school transportation statutes clearly evince an intent on the part of the Legislature that children transported to and from school and children being transported while engaged in extracurricular activities should be transported in vehicles meeting certain safety standards and driven by persons meeting certain requirements. 65 Op. Att'y Gen. 298 (1976). *Page 152 
Section 121.52 spells out vehicle, operator and driver requirements for vehicles operated under contract or for compensation. Similarly, subsection 121.555(2)(c) lists operator requirements clearly designed to insure that the driver of a vehicle not operated under contract, but who is also transporting pupils is a safe driver. Subsection (d) relating to seating requirements is also a safety feature. Concluding that these two subsections apply to volunteer drivers is consistent with legislative intent to provide safe transportation to school children.
BCL:ISM *Page 153